```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X
GOVERNMENT EMPLOYEES INSURANCE CO.,

                              Plaintiff,
                                                    ORDER
              - against -
                                              CV 2012-5633 (NGG)(MDG)
DIANE SACO, ET AL.,

                              Defendants.
- - - - - - - - - - - - - - - - - - -X
```

This is a declaratory judgment action brought by Government Employees Insurance Company ("GEICO") against defendants Suzanne Kasulas and Diane Saco for a declaration that it is not obligated to pay more than the face amount of automobile and umbrella policies it issued to Ms. Saco. Ms. Kasulas had sued Ms. Saco for injuries sustained in an accident in 2006 and obtained a verdict on March 5, 2012 in excess of the amount of the policies. Kasulas had previously moved, inter alia, to compel disclosure of certain documents that plaintiff claimed were privileged or protected by work product. The parties agreed at a conference on August 13, 2013 with the Court's view that documents created after March 5, 2012 should not be disclosed. Since only five documents remained in dispute, this Court directed plaintiff to submit the documents for in camera inspection and to supplement its claim that the documents are protected from disclosure by the work product doctrine. Plaintiff followed with a motion to protect from disclosure five e-mail chains listed in its

privilege log, which it contends were "prepared in anticipation of litigation."  See Mot. for Discovery (ct. doc. 26); Privilege Log at 2 (ct. doc. 25, Ex. 2).

Plaintiff argues that five e-mail chains constitute protectable work product because they were generated in anticipation of subsequent bad faith litigation.  See Mot. for Discovery.  Plaintiff also argues that the date of the disposition in the underlying tort case, March 5, 2012, should not serve as a bright line between documents created in anticipation of subsequent bad faith litigation and those created as part of the underlying tort litigation.  See id.  Plaintiff has attached those e-mails to its motion for in camera inspection, but submitted no explanatory affidavit by a GEICO employee.

Although defendant Kasulas argues that the e-mail chains "provide unique and necessary information regarding GEICO's handling of the underlying claim" that are "crucial" to "GEICO's valuation of the case made during the underlying litigation," she does not explain why such information is unique, nor why she cannot obtain that information from other sources.  See Def.'s Opp'n at 1-2.  Additionally, Kasulas argues that the plaintiff does not provide any affidavits or objective evidence that those e-mail chains were generated after deciding to litigate the anticipated bad faith action.  See id. at 3.

In reply, plaintiff argues that Kasulas fails to prove a substantial need for the e-mail chains, other than her assertion that they are "unique." See Pl.'s Reply at 4. Plaintiff asserts that because it already produced reports by its counsel in the underlying action, none of which recommended that it tender its policy limits, the defendant already has GEICO's valuation of the underlying tort claim. See id. Further, counsel argues that allegations of bad faith were raised "as early as September 26, 2007," and therefore all the documents prepared subsequent to that date should be protected. See id.

The work-product doctrine, which has been codified in Fed. R. Civ. P. 26(b)(3), provides qualified protection from disclosure for documents and other tangible things "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3); see generally Hickman v. Taylor, 329 U.S. 495 (1947). The doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting Hickman, 329 U.S. at 510-11).

Work product is discoverable only upon a showing that the requesting party has "substantial need" of the materials to prepare his case and that the party "is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). Courts in this Circuit have found that "substantial need" and "undue hardship" do not exist where the information sought can be obtained through

-3-

depositions or other discovery methods. See Horn & Hardart Co. v. Pillsbury Co., 888 F.2d 8, 12 (2d Cir. 1989); Tribune Co. v. Purcigliotti, Civ. No. 93-7222, 1998 WL 175933 at *3-*5 (S.D.N.Y. Apr. 14, 1998) ("'Substantial need' cannot be shown where persons with equivalent information are available for deposition"); Maloney v. Sisters of Charity Hosp., 165 F.R.D. 26, 30-31 (W.D.N.Y. 1995) (holding that plaintiff had failed to make the requisite showing under Rule 26(b)(3) because she could obtain the information sought through depositions).

The party claiming work product protection, however, "bears the burden of establishing that the documents in question were 'prepared principally or exclusively to assist in anticipated or ongoing litigation.'" Adlman, 134 F.3d at 1202 (quoting United States v. Const. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996)). Unless the privilege is overcome, it bars discovery "where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation." Adlman, 134 F.3d at 1195; see also Hickman, 329 U.S. at 511.

In determining whether material was prepared "in anticipation of litigation," the proper inquiry is "whether the documents were prepared 'because of' existing or expected litigation." Adlman, 134 F.3d at 1198. Documents are "deemed prepared in 'anticipation of litigation' if 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" Strougo v. Bea Assocs., 199 F.R.D. 515, 520-21 (S.D.N.Y. 2001)

-4-

(quoting Adlman, 134 F.3d at 1202). In other words, "the pertinent question is what would have happened had there been no litigation threat – that is, whether the party seeking work product protection would have generated these documents if it were acting solely for its business-related purposes." William A. Gross Const. Assoc. v. Am. Mfrs. Mut. Ins. Co., 262 F.R.D. 354, 360 (S.D.N.Y. 2009); see also Adlman, 134 F.3d at 1202 (noting that the "because of" formulation does not protect "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation"). Distinguishing between documents prepared in anticipation of litigation and those created in the ordinary course of business is particularly fact specific in the insurance context because "the very business" of an insurance company "is to evaluate claims that may ultimately ripen into litigation." Weber v. Paduano, 2003 WL 161340, at *4 (S.D.N.Y. Jan. 2, 2003) (internal citations omitted)). Accordingly, the party opposing production must demonstrate by "specific and competent evidence" that the documents were created because of litigation. See QBE Ins. Corp. v. Interstate Fire & Safety Equip. Co., Civ. No. 07-1883, 2011 WL 692982 at *3 (D. Conn. Feb. 11, 2011)(quoting Weber, 2003 WL 161340, at *4).

As a preliminary matter, this Court notes that the issue over work product here centers on the question of when plaintiff first anticipated the possibility of bad faith litigation rather than over conduct of the underlying tort litigation. As previously discussed and conceded by plaintiff, having provided a defense for Saco in the underlying litigation, plaintiff cannot

-5-

shield from discovery materials which concern Saco's defense. After review of the publicly filed letters and the e-mails submitted to the Court for <u>in camera</u> inspection, this Court finds that the earliest objective indication that GEICO was contemplating allegations of bad faith is February 11, 2008, when plaintiff's counsel wrote that by not responding to plaintiff's demands, it was "acting in bad faith regarding it[s] insured." <u>See</u> Pl.'s Reply, Ex. E (Letter from Randall Lazzaro to Joe Karpowicz). Accordingly, the Court finds that the October 29, 2007 e-mail chain, which was generated before this date and does not suggest anticipation of any bad faith litigation, does not fall within work product protection. Fed. R. Civ. P. 26(b)(3); <u>Strougo</u>, 199 F.R.D. at 520-21.

Second, this Court finds that the partially undated e-mail chain between John Quagliato, Edgar Sabanegh and Don Truitt is protected from disclosure because the undated portion of the formatted e-mail clearly was written after March 5, 2012, a date which, as discussed the last conference, provides a "bright line" to shield documents from disclosure. In any event, this e-mail chain clearly was created in anticipation of bad faith litigation and is protectable work product. It may also be attorney advice, though plaintiff provides insufficient information for that finding to be made. Further, plaintiff asserts that it has already produced reports by its counsel in the underlying action, which do not recommend tendering the policy's limits, <u>see</u> Pl.'s Reply at 4, and, thus GEICO's valuation of the underlying tort

claim, which Kasulas states is "crucial," can be obtained via other discovery methods. Accordingly, to the extent Kasulas now seeks that e-mail chain, she has not shown a "substantial need" for the e-mail chain sufficient to overcome work product protection. Fed. R. Civ. P. 26(b)(3); see Horn & Hardart Co., 888 F.2d at 12

Last, this Court finds that the three remaining e-mail chains are not protectable work product; they neither refer nor allude to any impending or existing bad faith litigation, but instead appear to discuss only the status and handling of the underlying case against Kasulas. Contrary to plaintiff's argument that there was "no question that [all] the emails were generated to address the [bad faith] claims against the insurer GEICO," see Mot. for Discovery at 2, those three e-mail chains refer only to GEICO's internal decisions on how to address negotiations with defendant Kasulas and her attorney in the underlying tort claim. They do not fairly suggest contemplation of an anticipated bad faith claim. Strougo, 199 F.R.D. at 520-21. Rather, they reflect discussion of the conduct of the underlying litigation, which, in the context of this dispute, are writings that would have been prepared anyway in the ordinary course of business, rather than in anticipation of bad faith litigation. See Chen-Oster v. Goldman, Sachs & Co., 2013 WL 3009489, No. 10-cv-6950, at *3 (S.D.N.Y. June 18, 2013) (citations omitted). Because plaintiff has not demonstrated by specific and competent evidence that those three e-mail chains

were generated because of anticipated bad faith litigation, those three e-mail chains do not constitute work product.  See QBE Ins., 2011 WL 692982, at *3 (quoting Weber, 2003 WL 161340, at *4).

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to shield the five e-mails from disclosure is granted in part and denied in part.

**SO ORDERED.**

Dated:   Brooklyn, New York
         October 2, 2013

/s/_____
MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE