UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE
COMPANY,

                **MEMORANDUM & ORDER**

            Plaintiff,

                **12-CV-5633 (NGG) (MDG)**

            -against-

DIANE SACO, SUZANNE KUSULAS,

            Defendants.
------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Government Employees Insurance Company ("GEICO") brings this action against Defendants Diane Saco and Suzanne Kusulas seeking declaratory relief pursuant to 28 U.S.C. § 2201 concerning the parties' respective rights and obligations under two insurance policies issued by GEICO. The underlying dispute arises from Plaintiff's defense of its insured, Defendant Saco, in a state court tort action brought by Defendant Kusulas seeking compensation for injuries sustained in an automobile accident. Defendants separately have moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (Kusulas Mot. to Dismiss (Dkt. 8) at 1 ("Kusulas Mot."); Saco Mot. to Dismiss (Dkt. 11) at 2 ("Saco Mot.").) For the reasons explained below, Defendants' Motions to Dismiss the Complaint are DENIED.

I.     **BACKGROUND**

For the purpose of the instant motions, the Court will assume the truth of the following allegations from Plaintiff's Complaint. See Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010).

    A.     **Personal Injury Action**

On February 23, 2006, Defendant Diane Saco was involved in an automobile accident when the vehicle she was driving struck a vehicle in which Defendant Suzanne Kusulas was a

1

passenger. (Compl. ¶ 11 (Dkt. 1).) Kusulas suffered significant injuries as a result of the collision and ultimately underwent multiple spinal surgeries. In January 2007, Kusulas commenced a personal injury action against Saco in the Supreme Court for the State of New York, Kings County. See Kusulas v. Saco, Index. No. 1904/2007 (N.Y. Sup. Ct.).

At the time of the accident, Saco held automobile and umbrella policies issued by GEICO, which provided a combined $1,300,000 in relevant coverage. (Compl. ¶¶ 10, 26.) Acting on behalf of its insured, GEICO retained counsel to defend Saco in the personal injury suit and undertook its own investigation into Kusulas's allegations. (Id. ¶¶ 13-14.) Saco's defense counsel informed GEICO that a reasonable settlement value for the personal injury suit was $250,000, and otherwise signaled that Kusulas would have difficulty establishing that her second surgery resulted from the February 2006 collision. (Id. ¶¶ 15-16.)

On June 16, 2010, the state court granted summary judgment in favor of Kusulas, concluding that Saco bore sole responsibility for the accident and holding her liable for Kusulas's injuries. (Id. ¶ 17.) At some point subsequent to this decision, Saco retained personal counsel to monitor the case on her behalf. (Id. ¶ 23.) Having established Saco's liability for the accident, the court proceeded with a jury trial on damages in February 2012.

Beginning in October 2011, and continuing through the damages trial, Plaintiff made a series of escalating settlement offers to Kusulas. (Id. ¶¶ 18-21, 24-25.) Each offer was declined in turn. (Id.) In a final effort to settle the case, Plaintiff tendered the full amount available under Saco's $1.3 million policies. (Id. ¶ 26.) Kusulas's counsel indicated a willingness to accept the offer but demanded pre-judgment interest that had accrued since the court's decision on summary judgment. (Id. ¶ 27.) Plaintiff did not accept Kusulas's counteroffer on the grounds that it exceeded the applicable policy limits. (Id. ¶ 28.) The jury ultimately awarded Kusulas

$3,369,066.75 in compensatory damages. (Id. ¶ 29.) Saco's motion for remittitur was denied on June 12, 2012, and Saco's defense counsel filed a timely notice of appeal. (Id. ¶¶ 31-32.)

### B. Procedural History

As detailed in the Complaint, Saco had demanded that Plaintiff pay the full jury award notwithstanding the fact that it exceeds the applicable policy limits, as well as compensate her for the costs associated with retaining personal counsel. (Id. ¶¶ 33-35.) Saco also accuses Plaintiff of bad faith in its conduct of the personal injury action—specifically, she asserts that her insurer should have tendered the full value of her policies earlier. (Id.)

Plaintiff filed the instant action against Saco and Kusulas on November 15, 2012, seeking declaratory relief pursuant to 28 U.S.C. § 2201 concerning the scope of its duty to indemnify Saco under the automobile and umbrella policies. (See Compl.) Specifically, Plaintiff requests a declaratory judgment stating that: (1) "[t]he policies issued to Saco by GEICO do not require that GEICO pay any sums in excess of the policy limits"; (2) "[t]he policies issued to Saco by GEICO do not require that GEICO compensate Saco for her personal attorney's fees"; and (3) "GEICO satisfied its obligations under the policies in good faith and no claim for bad faith by Saco or any potential assignee exists." (Id. ¶ 41.) Plaintiff also requests costs and any other appropriate relief. (Id.)

In accordance with the schedule set by the court, on April 30, 2013, Defendants Saco and Kusulas filed separate Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (See Kusulas Mot. to Dismiss; Saco Mot. to Dismiss.)[1]

---

[1] Plaintiff filed separate memoranda of law opposing Defendants' motions. Though largely duplicative, for the sake of clarity the court will refer to each opposition separately. (See GEICO's Mem. of Law in Opp'n to the Mot. by Suzanne Kusulas to Dismiss (Dkt. 35) ("Kusulas Opp'n"); GEICO's Mem. of Law in Opp'n to the Mot. by Diane Saco to Dismiss (Dkt. 36) ("Saco Opp'n").)

3

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a claim must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility "is not akin to a probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted).

In contemplating a motion to dismiss, the court must be mindful that while it "must accept as true all of the allegations contained in the complaint," that "tenet . . . is inapplicable to legal conclusions." Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 556 U.S. at 678. Determining whether a complaint adequately states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; Harris, 572 F.3d at 72.

Likewise, when considering a motion to dismiss for lack of subject matter jurisdiction, the court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff." Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006). Dismissal is proper under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate" a case. Sokolowsky v. Metro. Transp. Auth., 723 F.3d 187, 190 (2d Cir. 2013) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). By invoking federal jurisdiction, the plaintiff bears the burden of proving the court's jurisdiction by

a preponderance of the evidence. See Hamm v. United States, 483 F.3d 135, 137 (2d Cir. 2007) (quoting Luckett v. Bure, 290 F.3d 493, 496 (2d Cir. 2002)).

Where, as here, a motion to dismiss is made pursuant to both Rules 12(b)(1) and 12(b)(6), the jurisdictional motion must be considered first because if the court dismisses the complaint for lack of subject matter jurisdiction, "the accompanying defenses and objections become moot and do not need to be determined." United States ex rel. Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148, 1156 (2d Cir.1993) (internal quotation marks and citation omitted); see also Magee v. Nassau Cnty. Med. Ctr., 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998) ("A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction.").

## III. DISCUSSION

### A. Jurisdiction & Justiciability Under The Declaratory Judgment Act

Defendants separately move to dismiss the instant action pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (See Kusulas Mot.; Saco Mot.) Defendant Kusulas moves to dismiss the Complaint on the grounds (i) that the court lacks subject matter jurisdiction over Plaintiff's claims for declaratory relief (Kusulas Mot. at 3-4), and (ii) that the Complaint fails to state justiciable claims for declaratory relief (id. at 4-6). Saco incorporates the second argument into her respective motion by reference and without further exposition. (Saco Mot. at 2.) However, neither Kusulas nor Saco contest the presence of diversity jurisdiction under 28 U.S.C. § 1332. (See Compl. ¶ 4-8.) Rather, alternatively citing to Rules 12(b)(1) and 12(b)(6), Defendants challenge the justiciability of the underlying controversy and the court's ability to exercise its jurisdiction over Plaintiff's claims under the Declaratory Judgment Act ("DJA"), 28

U.S.C. § 2201, which provides the relevant rule of decision.[2] (Kusulas Mot. at 3-6.) For the reasons outlined below, the court concludes that it may exercise its jurisdiction over Plaintiff's justiciable claims for declaratory relief.

1. Legal Standard

The Declaratory Judgment Act provides in relevant part that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). However, the Act does not confer an independent basis for subject matter jurisdiction. See E.R. Squibb & Sons, 241 F.3d 154, 177 (2d Cir. 2001); PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1110 (2d Cir. 1997). Subject matter jurisdiction under the Declaratory Judgment Act is limited to an "actual controversy" and is coextensive with the case or controversy requirement embedded in Article III of the Constitution. See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128 (2007); Barry v. City of New York, 933 F. Supp. 2d 416, 424 (E.D.N.Y. 2013). Consistent with the general rule, the party seeking a declaratory judgment bears the burden of proving that the court has jurisdiction—i.e. the existence of an "actual controversy." See E.R. Squibb, 241 F.3d at 177.

An actual controversy has been defined as one that is "real and substantial . . . admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Olin Corp. v. Consol.

---

[2] The Second Circuit has acknowledged that justiciability challenges may present difficulties for parties when labeling a motion to dismiss declaratory claims. See Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp., 90 F.3d 671, 675 (2d Cir. 1996) (discussing proper citation for ripeness challenge to a claim for declaratory relief). While jurisdiction and justiciability are not synonymous, see id., the standard for determining whether there is an "actual controversy" under the DJA—which is discussed in more detail below—has been referred to both as a jurisdictional inquiry, see E.R. Squibb & Sons, 241 F.3d 154, 177 (2d Cir. 2001) ("Jurisdiction exists only if there is an 'actual controversy' . . . ."), and a justiciability inquiry, see SR Int'l Bus. Ins. Co., Ltd. v. Allianz Ins. Co., 343 F. App'x 629, 631-32 (2d Cir. 2009) (referring to the same inquiry as a "standard for ripeness"). As such, the court will look past the specific citations used by Defendants to label their various challenges to Plaintiff's declaratory claims and consider them individually under the DJA.

Aluminum Corp., 5 F.3d 10, 17 (2d Cir. 1993) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241 (1937). However, "the difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree," and the requisite inquiry does not lend itself to a precise test applicable in every case. Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941); see also M.V.B. Collision, Inc. v. Allstate Ins. Co., No. 07-CV-0187 (JFB), 2007 WL 22888046, at *7 (E.D.N.Y. Aug. 8, 2007) ("Several courts have acknowledged the difficulty of line-drawing between those cases in which a controversy is of a hypothetical or speculative nature, and those that present issues of 'sufficient immediacy and reality' to warrant declaratory relief."). As described by the Supreme Court:

> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interest of sufficient immediacy and reality to warrant to the issuance of a declaratory judgment.

Maryland Cas., 312 U.S. at 273.

The touchstone for whether a controversy is ripe for resolution by declaratory judgment—or whether it is sufficiently real and immediate—is whether the relief sought "relates to a dispute where the alleged liability has already accrued or the threatened risk occurred, or rather whether the feared legal consequence remains a mere possibility, or even probability of some contingency that may or may not come to pass." U.S. Dep't of Treasury v. Official Comm. of Unsecured Creditors of Motors Liquidation Co., 475 B.R. 347, 358 (S.D.N.Y. 2012) (quoting Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d 394, 406-07 (S.D.N.Y. 2002), aff'd 346 F.3d 357 (2d Cir. 2003)). Despite the foregoing, however, the fact that "a liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action." Associated Indem. Corp. v. Fairchild Indus., Inc., 961 F.2d 32, 35 (2d Cir. 1992); see also SR Int'l Bus. Ins. Co., Ltd. v. Allianz Ins. Co., 343 F. App'x 629, 632 (2d Cir. 2009). Where the underlying

7

controversy rests upon the occurrence of a contingent event, the Second Circuit instructs courts to focus on "the practical likelihood that the contingencies will occur." Fairchild Indus., 961 F.2d at 35.

### 2. Application

Plaintiff's various claims for declaratory relief arise from a single dispute concerning the scope of its duty to indemnify its insured for the approximately $2 million excess judgment awarded above the applicable policy limits. First, Plaintiff seeks a declaration that "the policies issued to Saco by GEICO do not require that GEICO pay any verdict amount that exceeds the policy limits or any attorney fees of Saco's personal attorney" (the "contractual interpretation claims"). (Compl. ¶ 36.) Second, Plaintiff requests a declaration that it "satisfied all its obligations under its policies with Saco and she has no valid claim that GEICO acted in bad faith" (the "good faith claim"). (Id.) Though facets of the same dispute, each set of claims will be addressed in turn.

#### a. *Contractual Interpretation Claims*

Defendant Kusulas contests the court's jurisdiction over Plaintiff's claims on the grounds that she "has no contractual relationship with plaintiff GEICO and any declaratory action regarding the insurance contract between GIECO [sic] and its insured Saco does not involve Ms. Kusulas." (Kusulas Mot. at 3-4.) She similarly maintains that Plaintiff's claims relating to "its non-liability for the verdict amount" in excess of the applicable policy limits is "not yet ripe" because she has yet to file an action pursuant to N.Y. Insurance Law § 3420(b)(1) to enforce the judgment in the personal injury action. (Id. at 4) Section 3420(b)(1) provides injured parties a private right of action against insurance companies to recover the amount of a judgment obtained against an insured, effectively granting them the right to enforce the insured's right of

contribution or indemnity. N.Y. Ins. Law § 3420(b)(1). Kusulas argues that because no judgment has been entered in the personal injury suit and no claim made under section 3420(b)(1), Plaintiff's contract interpretation claims are premature and should be dismissed as they relate to her. (Kusulas Mot. at 4.)

In response, Plaintiff reasons that Kusulas has an imminent right to bring an enforcement action against GEICO and that it should "not be compelled to be held hostage by Kusulas' delay in filing a judgment." (Kusulas Opp'n at 8.) Rejecting Kusulas's argument that its demand for declaratory relief is premature, Plaintiff notes that the personal injury suit has already proceeded to trial, its insured has already been found liable, and that the sole impediment to Kusulas's section 3420(b)(1) action is the filing of the judgment in the underlying action—which she may do at any time. (Id. at 9-10.)

As a preliminary matter, Kusulas's argument that she is not a proper defendant to this action is contrary to Supreme Court precedent. See Maryland Cas., 312 U.S. at 273-74 (holding an "actual controversy" under the Declaratory Judgment Act existed between the plaintiff insurer and the injured party). Indeed, courts in this circuit regularly exercise jurisdiction over declaratory actions concerning the interpretation of insurance policies in which injured parties are named as co-defendants. See, e.g., Am. Empire Surplus Lines Ins. Co. v. MJM Assocs. Constr. LLC, No. 12-cv-0090 (ENV), 2012 WL 2830014 (E.D.N.Y. July 10, 2012) (rejecting argument that court lacked subject matter jurisdiction in declaratory action brought by insurer against insured and injured party); Century Sur. Co. v. Odyssey Mech. Corp., No. 09-CV-1040, 2011 WL 4529637 (E.D.N.Y. Sept. 27, 2011) (same); Empire Fire & Marine Ins. Co. v. Elrac, Inc., No. 04-CV-10315 (GEL), 2006 WL 3734308 (S.D.N.Y. Dec. 18, 2006) (same). Consistent with the weight of authority, the court finds that the lack of contractual privity between Plaintiff

and Kusulas, upon which the latter places great weight, does not negate the possibility that an actual controversy amenable to resolution in the instant action may exist between them.

The court also finds adequate grounds to support federal jurisdiction over Plaintiff's contractual interpretation claims as they relate to both Defendants, notwithstanding the fact that Kusulas has yet to file a separate section 3420(b)(1) suit. The Second Circuit has recognized that "litigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real." E.R. Squibb & Sons, 241 F.3d at 177 (citation and quotation marks omitted). Here, the parties' dispute over the scope of Plaintiff's indemnification obligations implicates few contingencies: the underlying personal injury suit has been filed, the insured's liability has been established, and the injured party has been awarded damages in excess of the applicable policy limits by a jury. (Compl. ¶¶ 12, 17, 29.) The dispute over the excess judgment is neither hypothetical or conjectural, but rather well-defined and suitable for resolution in the current action. Plaintiff's insured has demanded that it "pay the full amount of the jury verdict even though it exceeds the limits of her policies" and "compensate her for the costs she incurred in retaining her personal counsel" (id. ¶ 33-34), and the party holding the judgment against its insured has the imminent right to enforce it against Plaintiff in a direct action (Kusulas Opp'n at 5, 8.) Considering the magnitude of the approximately $2 million excess judgment, together with Kusulas's self-defeating argument that Plaintiff continues to owe her additional pre-judgment interest (Kusulas Reply (Dkt. 10) at 5-7), the court finds that the parties are clearly adverse and that the controversy concerning the scope of Plaintiff's duty to indemnify is sufficiently real and

immediate to support federal jurisdiction over the contract interpretation claims as they relate to both Saco[3] and Kusulas[4].

### b. *Good Faith Claim*

The justiciability of Plaintiff's demand for a declaration that "GEICO satisfied all its obligations under the policies" and that Saco "has no valid claim that GEICO acted in bad faith" in failing to settle the personal injury suit is a closer matter. (Compl. ¶ 36.) Defendants jointly argue for dismissal of Plaintiff's good faith claim on the grounds Saco has not filed a separate bad faith action, and that the "threat" of her doing so is "merely speculative at this time." (Kusulas Mot. at 4; Saco Mot. at 2.) Additionally, Defendants argue that "GEICO may not seek a prospective determination of its liability . . . where the conduct at issue is GEICO's past actions in failing to settle the underlying claim." (Kusulas Mot. at 6; Kusulas Reply at 9.) Because Plaintiff's good faith claim is integral to the larger case or controversy previously discussed, the court finds adequate grounds for federal jurisdiction.

It is well-settled under New York law that an insurer may be held liable for the breach of its duty of good faith in defending or settling claims against its insured. See New Eng. Ins. Co. v. Healthcare Underwriters Mut. Ins. Co., 295 F.3d 232, 240-41 (2d Cir. 2002); Pavia v. State Farm Mut. Auto. Ins. Co., 82 N.Y.2d 445, 452 (1993). "The duty of 'good faith' settlement is an

---

[3] See, e.g., SR Int'l Bus. Ins., 343 F. App'x at 632-33 (holding insurer's declaratory suit against insured was proper under Declaratory Judgment Act where dispute concerned "pure question of contract interpretation requiring no further factual development"); GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc., 696 F. Supp. 2d 203, 212-13 (E.D.N.Y. 2010); Empire Fire & Marine Ins., 2006 WL 3734308, at *2-4; Morris v. Progressive Cas. Ins. Co., 662 F. Supp. 1489, 1491 (S.D.N.Y.1987) ("Disputes over coverage afforded by an insurance policy present an actual case or controversy, so that declaratory judgment is appropriate.").

[4] See, e.g., Maryland Cas., 312 U.S. at 273 (concluding actual controversy existed where state law afforded the injured party a statutory right to proceed against the insurer for a judgment obtained against its insured, despite the fact that such action had not yet been filed); Atl. Cas. Ins. Co. v. Value Waterproofing, Inc., 918 F. Supp. 2d 243, 260-61 (S.D.N.Y. 2013) (granting declaratory relief concerning insurer's duty to indemnify against insured and injured party where liability was established in separate action), aff'd sub nom. Atl. Cas. Ins. Co. v. Greenwich Ins. Co., No. 13-CV-0540, 2013 WL 6697883 (2d Cir. Dec. 20, 2013); Am. Empire Surplus Lines Ins. Co. v. MJM Assocs. Constr. LLC, No. 12-CV-0090 (ENV), 2012 WL 2830014 (E.D.N.Y. July 10, 2012) (finding injured party was proper defendant to declaratory action during pendency of his tort action against the insured).

implied obligation derived from the insurance contract," id., and an action to enforce its breach therefore sounds in contract, DiBlasi v. Aetna life & Cas. Ins. Co., 542 N.Y.S.2d 187, 193 (2d Dep't 1989). As such, a successful bad faith claim generally entitles the insured to collect compensatory damages[5]—i.e. the amount by which the judgment exceeds the applicable policy limits, or the excess judgment. See Pinto v. Allstate Ins. Co., 221 F.3d 394 (2d Cir. 2000) (holding proper measure of damages in bad faith action is the amount of the excess judgment, regardless of the insured's financial condition); Peterson v. Allcity Ins. Co., 472 F.2d 71 (2d Cir. 1972); see also Pavia v. State Farm Mut. Auto. Ins. Co., 589 N.Y.S.2d 510, 517 (2d Dep't 1992) ("It is settled in New York that with respect to a solvent insured, the measure of damages in a bad faith case is the amount by which the judgment in the underlying tort action exceeds the insured's policy coverage."), aff'd in part and rev'd on other grounds, 82 N.Y.2d 445 (1993).

Defendants are correct that prospective declaratory relief cannot be used "solely to adjudicate [a defendant's] past conduct." KM Enters., Inc. v. McDonald, No. 11-CV-5098 (ADS), 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012) (internal citation and quotation marks omitted), aff'd 518 F. App'x 12 (2d Cir. 2013). But that is not the case here. Any dispute over whether Plaintiff conducted settlement negotiations in the underlying tort action in good faith is inextricably bound up in the "continuing live controversy" before the court. See Hernandez v. European Auto Collision, Inc., 487 F.2d 378, 387 (2d Cir. 1973) (Timbers, C.J., concurring). As discussed in the preceding section, the justiciable case or controversy underlying the Complaint concerns the scope of Plaintiff's duty to indemnify its insured for the

---

[5] The New York Court of Appeals has indicated, in dicta, that the precise measure of damages in a bad faith action may depend on whether the insured is solvent or not, particularly when the suit is brought by an assignee of the insured. See Gordon v. Nationwide Mut. Ins. Co., 30 N.Y.2d 427 (1972). However, regardless of the insured's financial condition, damages generally do not exceed the amount of the excess judgment. See Peterson, 472 F.2d at 79-80 (discussing Gordon and the measures of damages in bad faith actions, none of which exceed the excess judgment at issue).

12

roughly $2 million excess judgment. Given the nature of the relief available in a bad faith action, Plaintiff's good faith claim is integral to its effort to settle any uncertainty regarding that liability. In effect, a bad faith action would represent another means to Defendants' desired end: Plaintiff's indemnification of Saco for the excess judgment.

Defendants' reliance on National Union Fire Ins. Co. of Pittsburgh, PA. v. International Wire Group, Inc., does not convince the court otherwise. No. 02-CV-10338 (SAS), 2003 WL 21277114 (S.D.N.Y. June 2, 2003). (See Kusulas Mot. at 5-6.) In National Union, the district court exercised its discretion not to entertain jurisdiction over an insurer's request for a declaration of non-liability for a single past action: its refusal to defend its insured against unrelated tort claims. Nat'l Union, 2003 WL 21277114, at *1, 5. Here, by contrast, Plaintiff *does* "seek a prospective determination of its rights and responsibilities" under the insurance contracts. Id. at *5. While the controversy supporting the court's jurisdiction certainly extends into the past, the arguments proffered by Defendants illustrate that it remains very much alive. (Kusulas Mot. at 3-4; Kusulas Reply at 5-8.) Additionally, National Union is factually distinguishable from this case. The insured in National Union had initiated a bad faith action in another jurisdiction by the time the district court considered the suitability of the dispute for declaratory relief, and the declaration sought in that case covered both tort and contractual claims. Id. at *1-2, 5. Neither is the case here.

Plaintiff's good faith claim also is ripe for judicial resolution as one element of the larger case or controversy concerning Plaintiff's obligation to pay the excess judgment. Contrary to Defendants' argument that it is "merely speculative at this time," the court is satisfied that this element of the dispute is sufficiently real and immediate to permit adjudication of the parties' legal interests. "Saco has accused GEICO of acting in bad faith for not tendering its policy

13

earlier in the underlying action" (Compl. ¶ 35), and Plaintiff need not wait for her to file a bad faith action to settle its ultimate liability for the outstanding judgment. See Great Am. Ins. Co. v. Houston Gen. Ins. Co., 735 F. Supp. 581, 585 (S.D.N.Y. 1990) ("A declaratory judgment is an opportunity for a party to a ripe legal controversy to have that controversy resolved by a Court promptly rather than waiting for the opposing party, with the ripe substantive right to sue, to choose to exercise its rights to judicial intervention . . . .").

**B.     Standing**

At various points in their respective briefs, the parties construe their arguments concerning the court's subject matter jurisdiction under the Declaratory Judgment Act in terms of standing. (Kusulas Opp'n at 2, 7-10; Kusulas Reply at 8.) In order to have standing under Article III, a plaintiff is "required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by favorable decision." Xin Wei Lin v. Chinese Staff & Workers Ass'n, 527 F. App'x 83, 86 (2d Cir. 2013). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss 'we presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citation omitted). "[T]he injury in fact requirement [for standing] is qualitative, not quantitative, in nature" and "highly case-specific." Baur v. Veneman, 352 F.3d 625, 637 (2d Cir.2003) (internal quotation marks omitted).

Though the specific elements of the constitutional standing inquiry are not argued by the parties, the court already has concluded that the Complaint presents a justiciable case or controversy under Article III of the Constitution. Together, the allegations in the Complaint and the magnitude of the excess judgment create a sufficient likelihood of future injury—that

Defendants will bring suit to expand the scope of Plaintiff's duty to indemnify its insured—to demonstrate "the irreducible constitutional minimum of standing." Lujan, 504 U.S. at 560-61. The excess judgment is traceable to the Defendants' state court action, and a decision favorable to Plaintiff on its contractual interpretation and good faith claims will resolve the dispute concerning Plaintiff's remaining liability under the insurance policies.

C.  **Abstention**

Defendants both urge the court to abstain from exercising jurisdiction over Plaintiff's demand for declaratory relief. "The Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' 28 U.S.C. § 2201(a), not that it *must* do so." MedImmune, 549 U.S. at 136 (emphasis in the original) (citing Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)). Even where an "actual controversy" exists, therefore, a court has discretion when deciding whether to exercise jurisdiction under the Declaratory Judgment Act. See id. ("[Section 221(a)] has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'"); Apotex Inc. v. Sanofi-Synthelabo, 386 F. Supp. 2d 549, 551 (S.D.N.Y. 2005) ("The DJA expressly confers discretion upon the district court to decide whether it will entertain jurisdiction."). When considering whether to entertain an action for declaratory judgment, the Second Circuit instructs district courts to consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 105 (2d Cir. 2012) (citation omitted).

Defendant Saco argues that the court should abstain from hearing Plaintiff's diversity action in favor of the pending state court personal injury action purportedly involving "the same

parties and same issues." (See Saco Mot. at 2-4; Saco Reply (Dkt. 13) at 3.) A federal court may abstain from exercising jurisdiction in favor of "parallel state-court litigation" only in those "exceptional circumstances" when the state court proceeding "could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources." Niagara Mohawk Power, 673 F.3d at 100-01 (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976)). "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." Id.; Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc., 466 F.3d 88, 94 (2d Cir. 2006) ("For two actions to be considered parallel, the parties in the actions need not be the same, but they must be substantially the same, litigating substantially the same issues in both actions.").

Here, Saco fails to establish that this case presents the type of "exceptional circumstances" warranting abstention in favor of a now-concluded state court action. Even if Saco were correct that Plaintiff's retention of counsel on her behalf is sufficient to establish commonality between the two actions, it is plain that the instant diversity case and Kusulas's state court tort action do not concern the same issues and therefore cannot be considered "parallel" under Colorado River. Plaintiff's complaint concerns only the scope of its duty to indemnify its insured. By contrast, the state court proceeding upon which Saco premises her abstention argument litigated her liability for the automobile accident and the damages owed to Kusulas. The mere fact that the current suit arose by virtue of the excess judgment awarded in the state court action does not render the two cases "parallel"; in fact, it proves just the opposite. As such, abstention in favor of the state court proceeding would be inappropriate.

Alternatively, Defendants both urge the court to abstain from entertaining Plaintiff's good faith claim on the grounds that it "is premature as the Court cannot make a factual determination

... regarding the merits of a threatened bad faith action" and that "discovery should be allowed to proceed on the issue of whether GEICO acted in bad faith" (Kusulas Mot. at 7-8.) The court briefly notes that, despite Defendants' concern, discovery in this case has proceeded in due course during the pendency of this motion. Moreover, the instant motions do not require the court to make any final determination on the merits of Plaintiff's claims. At this stage, the court is determining only whether Plaintiff has pleaded a valid claim for relief over which the court has jurisdiction.

Accordingly, having already concluded that the dispute among the parties is ripe for judicial resolution, the court declines Defendants' invitation to abstain from exercising its jurisdiction over the Complaint. A judgment in this matter would serve a "useful purpose" by settling any remaining dispute concerning the scope of Plaintiff's duty to indemnify its insured and its remaining liability for the excess judgment. Further, judicial determination of these issues will finalize the controversy as it relates to Plaintiff, and provide it with total relief from the uncertainty surrounding its obligations toward Saco.

### D. Motion to Stay

In the alternative, should the court deny her motion to dismiss, Defendant Saco requests that the court stay the instant action until all proceedings in the underlying state court suit have been completed. (Saco Mot. at 5; Saco Reply at 6.) As the court has already concluded, however, these two actions do not concern the same issues and are not duplicative of one another. Cf. Hucaluk v. Molgora, No. 86-CV502 (JFK), 1988 WL 31863 (S.D.N.Y. Mar. 14, 1988) (staying federal case in light of "an *identical* action pending in Pennsylvania state court") (emphasis added); Glen Gery Corp. v. Tomkins Wholesale Inc., No. 90-CV-2935 (CES), 1991 WL 60405 (S.D.N.Y. Apr. 3, 1991) (granting request for stay "where the state action will

necessarily address the issues raised in the federal complaint"). The court therefore sees no reason to delay consideration of Plaintiff's claims in favor of the state court action, and Saco's request for a stay accordingly is denied.

### E. Sanctions

Finally, without citing any authority, Defendant Saco requests the court impose sanctions on Plaintiff for "misrepresent[ing] the status of the state court action" and for "act[ing] in contravention of its position in the state court proceedings." (Saco Mot. at 5; Saco Reply at 6.) Saco's request arguably is frivolous, and itself violates the express terms of Rule 11.

"A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c); see also id. advisory committee's note ("[R]equests for sanctions must be made as a separate motion, i.e., not simply included as an additional prayer for relief contained in another motion."). Further, such motion may not be filed until 21 days after it has been served upon the opposing party and the offending "paper, claim, defense, contention, or denial" has not been withdrawn or otherwise corrected. Id. Saco's request patently fails to conform to these requirements. The safe-harbor provision built into Rule 11 "is a strict procedural requirement," Star Mark Mgmt. Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.2d 170, 175-76 (2d Cir. 2012), which the court will not overlook simply because a separate motion "multipl[ies] the expenses of the parties" (Saco Mot. at 7.) Accordingly, Saco's request for sanctions is denied as procedurally defective.

While Defendants may bring a separate Rule 11 motion in their discretion, the court strongly advises against doing so. Without reaching the merits of Saco's request, the court notes only that it has reviewed both the Complaint and each party's motion papers and sees no legitimate basis to impose sanctions on Plaintiff. Further, Defendants are cautioned that should

they bring another facially deficient demand for sanctions under Rule 11 the court will entertain a cross-motion from Plaintiff and consider imposing sanctions on its own initiative.

## IV. CONCLUSION

For the reasons set forth above, Defendants Motions to Dismiss the Complaint are DENIED.

SO ORDERED.

Dated: Brooklyn, New York  
February 18, 2014

s/Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge