UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

GOVERNMENT EMPLOYEES INSURANCE
COMPANY,

                    Plaintiff,

       -against-

DIANE SACO and SUZANNE KUSULAS,

                    Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-5633 (NGG) (MDG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Government Employees Insurance Company ("GEICO") brings this action against Defendants Diane Saco and Suzanne Kusulas pursuant to 28 U.S.C. § 2201, seeking declaratory relief concerning the parties' respective rights and obligations under two insurance policies issued by GEICO. The underlying dispute arises from GEICO's defense of its insured, Saco, in a state court tort action brought by Kusulas, seeking damages for injuries that she sustained in an automobile accident. GEICO has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) with respect to Kusulas's breach of contract counterclaim, and has moved to strike Kusulas's third-through-eighth affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f). (Mot. for J. on the Pleadings (Dkt. 73).) Kusulas has also moved for judgment on the pleadings with respect to her breach of contract counterclaim. (Mot. for J. on the Pleadings (Dkt. 70).)[1] For the reasons discussed below, the

---

[1] Although Kusulas's cross-motion was at first filed without leave of court (see Oct. 17, 2014, Order), the court later retroactively granted Kusulas leave to file her cross-motion (see Nov. 19, 2014, Min. Entry). In addition, the court granted Kusulas leave to file a reply to GEICO's response to her opposition brief. (See id.) Thus, the parties filed four briefs in connection with their motions: GEICO's opening brief for judgment on the pleadings and in support of striking certain defenses (Dkt. 73); Kusulas's opposition brief and cross-motion for judgment on the pleadings (Dkts. 70, 74); GEICO's reply in support of its motion (Dkt. 75); and Kusulas's reply in opposition to GEICO's motion and in further support of her cross-motion (Dkt. 81).

1

parties' cross-motions for judgment on the pleadings are DENIED. GEICO's motion to strike the third-through-eighth affirmative defenses is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

### A. State Court Personal Injury Action

On February 23, 2006, Saco was involved in an automobile accident when the vehicle she was driving struck a vehicle in which Kusulas was a passenger. (Compl. (Dkt. 1) ¶ 11.) Kusulas suffered significant injuries as a result of the collision, and in January 2007, commenced a personal injury action against Saco in the Supreme Court for the State of New York, Kings County. (Id. ¶ 12.)

At the time of the accident, Saco held automobile and umbrella policies issued by GEICO, which provided a combined $1.3 million in coverage: $300,000 from the primary policy and $1,000,000 in excess coverage from the umbrella policy. (Id. ¶¶ 10, 26; Kusulas Ans. (Dkt. 51) ¶ 22.) On June 16, 2010, the state court granted summary judgment in favor of Kusulas, concluding that Saco bore sole responsibility for the accident and holding her liable for Kusulas's injuries. (Compl. ¶ 17.) Having established Saco's liability, the court proceeded with a jury trial to determine damages. (See id. ¶ 22.) At some point subsequent to the summary judgment decision, Saco retained personal counsel to monitor the case on her behalf. (Id. ¶ 23.) Throughout the damages trial, GEICO made a series of escalating settlement offers to Kusulas, each of which Kusulas rejected. (Compl. ¶¶ 18-21, 24-25; Kusulas Ans. ¶¶ 42, 46.)

In a final effort to settle the case, GEICO tendered the full amount available under Saco's $1.3 million policies, minus funds that had been paid to another person injured in the accident. (Compl. ¶ 26; Kusulas Ans. ¶ 59.) Kusulas's counsel indicated a willingness to accept the offer, but demanded pre-judgment interest that had accrued since the court's summary judgment

2

determination. (Compl. ¶ 27; Kusulas Ans. ¶¶ 59, 60.) GEICO did not accept Kusulas's counteroffer to include pre-judgment interest on the grounds that it exceeded the applicable policy limit. (Compl. ¶ 28.) On March 5, 2012, the jury ultimately awarded Kusulas $3,369,066.75 in compensatory damages. (Id. ¶ 29.)

## B. Procedural History in Federal Court

Saco has demanded that GEICO pay the full jury verdict notwithstanding the fact that it exceeds the applicable policy limits, as well as compensate her for the costs associated with retaining personal counsel. (Compl. ¶¶ 33-35.) She has also accused GEICO of bad faith in its conduct in defending the personal injury action. (Id.)

In response to these demands, GEICO filed the instant action against Saco and Kusulas on November 15, 2012, seeking declaratory relief pursuant to 28 U.S.C. § 2201 concerning the scope of its duty to indemnify Saco under the automobile and umbrella policies. Specifically, GEICO requests a declaratory judgment stating that: "(1) the policies issued to Saco by GEICO do not require that GEICO pay any verdict amount that exceeds the policy limits or any attorney fees of Saco's personal attorney; and (2) . . . GEICO satisfied all its obligations under its policies with Saco and she has no valid claim that GEICO acted in bad faith." (Id. ¶ 36.)

Kusulas and Saco jointly moved to dismiss GEICO's action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (See Not. of Defs.' Mot. to Dismiss (Dkt. 11).) The court denied the motion to dismiss, concluding that GEICO's claim for declaratory relief is justiciable. See Gov't Emps. Ins. Co. v. Saco, No. 12-CV-5633 (NGG) (MDG), 2014 WL 639419 (E.D.N.Y. Feb. 18, 2014). Subsequently, Kusulas and Saco each filed Answers to GEICO's Complaint, in which they raised eight affirmative defenses and brought two state-law counterclaims, the first for breach of contract for GEICO's failure to pay pre-

3

judgment interest, and the second for bad faith in defending the underlying personal injury action. (See Saco Ans. (Dkt. 50); Kusulas Ans. (Dkt. 51).)

Kusulas thereafter withdrew the bad faith counterclaim without prejudice. (See Mot. to Withdraw Countercl. (Dkt. 68); Nov. 19, 2014, Min. Entry (deeming claim withdrawn without prejudice pursuant to Federal Rules of Civil Procedure 41(a)(1) and 41(c)).) She then filed a Complaint in the Supreme Court of New York, Kings County against GEICO and individual GEICO employees for bad faith in defending the personal injury action. (See Not. of Removal, Kusulas v. Gov't Emps. Ins. Co., No. 15-CV-00634 (NGG) (MDG) (E.D.N.Y. Feb. 9, 2015) (Dkt. 1) ¶¶ 1-2.) GEICO thereafter removed the bad faith action back to federal court on February 9, 2015, asserting diversity jurisdiction and arguing that the individual GEICO employees, all of whom reside in New York, were fraudulently joined to the state court bad faith action in order to destroy complete diversity. (Id. ¶¶ 3, 41, 47-50.)

Separately, on November 22, 2014, Saco assigned her claims against GEICO to Kusulas, thereby releasing Saco from further liability.[2] (See id., Ex. A ("Assignment of Cause of Action") at 38-41; Feb. 2, 2015, Kusulas Ltr. Mot. for Pre-Mot. Conf. (Dkt. 84) at 1 (explaining that Saco assigned her claims to Kusulas).)

Having reviewed the parties' briefs, the court now turns to the parties' cross-motions for judgment on the pleadings with respect to the breach of contract counterclaim, as well as GEICO's motion to strike Kusulas's third-through-eighth affirmative defenses.

---

[2] Accordingly, in this Memorandum and Order, the court refers to Saco and Kusulas together as "Kusulas." Although the assignment agreement between Saco and Kusulas is titled "Assignment of Cause of Action," it assigns to Kusulas "all causes of action [Saco] may have against [GEICO] arising out of the policy" (id. at 39), and both Kusulas and GEICO appear to be operating under the assumption that Saco is no longer a party-in-interest to this action. By referring to Saco and Kusulas together in this Memorandum and Order, the court assumes, without deciding, that Kusulas and GEICO are the only parties-in-interest remaining in this action.

4

## II. RULE 12(C) CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS

### A. Standard of Review

In deciding a Rule 12(c) motion for judgment on the pleadings, the court employs "'the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the [nonmovant's pleading] as true and drawing all reasonable inferences in favor of the nonmoving party.'" Byrd v. City of New York, No. 04-1396-CV, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005) (summary order) (quoting Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999)). Thus, the court grants a Rule 12(c) motion "'if it appears beyond doubt that the [nonmoving party] can prove no set of facts in support of his claim which would entitle him to relief.'" Id. (quoting Patel v. Searles, 305 F.3d 130, 135 (2d Cir. 2002)). In other words, "[t]o survive a Rule 12(c) motion, [the nonmovant's pleadings] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010) (internal quotation marks and citation omitted). As with a Rule 12(b)(6) motion for failure to state a claim, in determining a Rule 12(c) motion, courts are limited to considering the facts alleged in the pleadings, as well as documents that are attached to or incorporated by reference in the pleadings, and documents not incorporated in, but integral to, the pleadings. See Daniels ex rel. Daniels v. Comm'r of Soc. Sec., 456 F. App'x 40, 41 (2d Cir. 2012) (summary order) (citing Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993)).

### B. Discussion

Both parties have moved for judgment on the pleadings with respect to Kusulas's counterclaim for breach of contract. GEICO seeks a judgment dismissing the counterclaim and holding that, in withholding pre-judgment interest in excess of the policy limit of the relevant

5

insurance policies, GEICO has not breached the contracts. Kusulas, on the other hand, seeks a judgment that GEICO has breached the contracts and owes Kusulas pre-judgment interest for interest that accrued between the date of the liability decision—June 16, 2010—and the present. As explained below, the court cannot resolve the question at this stage of the proceeding, and therefore, the parties' cross-motions for judgment on the pleadings are DENIED.

The parties disagree as to whether, under Saco's insurance policies, GEICO must cover pre-judgment interest exceeding the policy limit that accrued between June 16, 2010, and the present. Under New York law, in a bifurcated personal injury case, pre-judgment interest from the date of liability determination is awarded to a successful plaintiff.[3] See Love v. State, 577 N.Y.S.2d 359, 361 (1991). However, an insurer (as opposed to the tortfeasor herself) is not necessarily liable for such pre-judgment interest where the interest exceeds the insurance policy limit. According to New York insurance regulations, an automobile liability insurance policy must, at a minimum, provide that the insurer shall "pay all interest accruing after entry of judgment until the insurer has paid or tendered or deposited in court such part of such judgment as does not exceed the applicable policy limits." 11 N.Y.C.R.R. § 60-1.1(b). GEICO correctly interprets this regulation as requiring that insurers pay all post-judgment interest on that portion of a judgment that is within the policy limit, even where such interest exceeds the policy limit; however, pursuant to this provision, insurers are not required to pay pre-judgment interest in excess of the policy limit, unless the insurance policy contains a more generous provision than what is required by 11 N.Y.C.R.R. § 60-1.1(b). See, e.g., Alejandro v. Liberty Mut. Ins. Co.,

---

[3] It appears from the briefing that both parties agree that New York law applies to this dispute. Thus, the court does not engage in a choice-of-law analysis. The awarding of pre-judgment interest is considered a question of state substantive law. See Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 90 (2d Cir. 1998) (applying state law in calculating pre-judgment interest on a state law claim); see also Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996) (holding that federal courts exercising diversity jurisdiction must apply state substantive law to any issue that has its source in state law).

924 N.Y.S.2d 124, 126 (App. Div. 2011) (holding insurer was not required to pay pre-judgment interest where the terms of the policy limited liability to $25,000 including pre-judgment interest, because such terms "are not less generous to the plaintiff than what is required pursuant to 11 N.Y.C.R.R. § 60-1.1(b)"); Reilley v. Gov't Emps. Ins. Co., 997 N.Y.S.2d 101, 101 (N.Y. Sup. Ct. 2014) ("Where there is an excess judgment in a bifurcated trial the insurer's responsibility is satisfied when interest is paid on the covered amount computed from the date of damages determination to actual payment.").

Although New York insurance regulations do not require that an automobile insurance policy cover pre-judgment interest in excess of the policy limit, an insurance policy may contain such a provision. In Dingle v. Prudential Property & Casualty Insurance Co., the underlying insurance policy did not expressly refer to pre-judgment interest, but provided: "After the case is decided, we'll pay the amount which the Court decides you or anyone else is responsible for, up to the maximum amount shown. . . . We'll pay any costs you may be responsible for. We'll also pay all interest on the amount for which the Court judges you or any other insured responsible that builds up between the time the Court decides the amount and the time we pay the amount which we're obliged to pay." 85 N.Y.2d 657, 658 n.1 (1995) (emphasis and ellipses in original). In Dingle, the parties agreed that based on the language "all interest on the amount for which the court judges you," the insurer was required to pay pre-judgment interest that had accrued from the date of the liability determination, and the only issue for the Court of Appeals was whether interest was to be calculated on the full amount of the judgment, or only on that amount of the judgment for which the insurer was responsible under its policy limit. Indeed, based on the specific contractual language, the New York Court of Appeals held the insurer liable for pre-judgment interest, from the date that liability was determined in the bifurcated proceeding, on

only that portion of the judgment within the policy limit, rather than the entire damages verdict. See id. at 661.

Accordingly, the terms of a policy are essential to determining whether an insurer agreed to pay pre-judgment interest, New York insurance regulations notwithstanding. In this case, the terms of the insurance policies between GEICO and Saco are ambiguous enough to prevent the court from granting judgment on the pleadings on the breach of contract counterclaim.[4] The policies are a primary policy with a $300,000 limit, and an umbrella policy with an additional $1,000,000 limit. The primary policy provides in a section entitled "Additional Payments We Will Make Under the Liability Coverages" that GEICO will cover "[a]ll interest accruing on that amount of a judgment which represents our limit of liability, until we have paid off, offered, or deposited in court that part of a judgment not exceeding the limit of our liability." (Mot. for J. on the Pleadings, Ex. 4 ("GEICO Ex. 4") (Dkt. 73-5) at 501-02 (emphasis added).)[5] In the umbrella policy, Part V provides that when GEICO provides the defense under the policy, it will "pay interest accruing after a judgment is entered in a suit we defend; our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our liability limit." (Id. at 538 (emphasis added).)

At this stage of the proceeding, the court cannot determine the meanings of "[a]ll interest accruing on that amount of a judgment" (primary policy) or "interest accruing after a judgment is

---

[4] The pleadings reference the relevant language of the primary insurance policy (see Kusulas Ans. ¶ 26; Saco Ans. ¶ 28), but do not reference language from the umbrella policy. The pleadings do mention $1,000,000 in "excess coverage" from the umbrella policy, without providing language from that policy. (See Kusulas Ans. ¶ 22; Saco Ans. ¶ 24.) The court, nonetheless, considers the umbrella policy, which GEICO submitted as an exhibit to its Rule 12(c) motion. (See Mot. for J. on the Pleadings, Ex. 4 (Dkt. 73-5).) See also Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) ("[C]onsideration is limited to the factual allegations in [the pleadings], . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in [plaintiff's] possession or of which [plaintiff] had knowledge and relied upon in bringing suit.").

[5] The policies are not consecutively paginated. For clarity, the court cites to the control numbers that GEICO has included in the bottom left corner of the exhibit attached to its brief. In the exhibit, the primary policy begins at page 493 and the umbrella policy appears to begin at page 531.

8

entered" (umbrella policy). The language in the primary policy appears similar to the that of the contract in Dingle, where the court held that the insurer owed pre-judgment interest in a bifurcated proceeding; the umbrella policy language appears similar to that in 11 N.Y.C.R.R. § 60-1.1(b) and in Saladino v. Stewart & Stevenson Services, Inc., No. 7427/11, 2011 WL 4544718, at *3 (N.Y. Sup. Ct. Sept. 16, 2011), where the payment of pre-judgment interest was not required under the terms of the relevant insurance contract. Moreover, New York case law has developed a general principle that where a contract uses similar, but not identical, language in different provisions, the use of different terms implies that the terms are to be accorded different meanings. See NFL Enter. LLC v. Comcast Cable Commc'ns, LLC, 851 N.Y.S.2d 551, 557 (App. Div. 2008) (citing Frank B. Hall & Co. of N.Y. v. Orient Overseas Ass'n, 425 N.Y.S.2d 66 (1979)).

The policies on their face do not resolve the issue of the apparently conflicting terms, nor does a provision in the umbrella policy—not cited by the parties—that states: "If both primary insurance and this policy cover an occurrence, we pay only those damages which exceed the liability limits in item V of the declarations, or any applicable primary policy, whichever is greater." (GEICO Ex. 4, at 537.) This clause does not make clear how the two policies are meant to interact, given that they cover different portions of the $1.3 million policy limit—there is more than one reasonable interpretation as to how the parties would determine which policy covers a "greater" amount of interest, and the significance of this provision is not clear. The pleadings make no attempt to clarify the relationship between the two policies, and in fact, do not even mention any of the specific language from the umbrella policy, nor do the parties' briefs provide greater clarity.

As a general matter, the court's objective in a contract action is to give effect to the intentions of the parties to the agreement. See Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990) In the current procedural posture, it is impossible to determine what the parties' intentions were with respect to either the meaning of the interest provisions of the two policies, or the interaction between the primary and umbrella policies and their provision of pre-judgment interest. Under New York law, where a contract is genuinely ambiguous, judgment on the pleadings is inappropriate, and extrinsic evidence of the parties' intent should be considered. See State of N.Y. v. Home Indem. Co., 66 N.Y.2d 669, 671 (1985) ("If, however, the language in the insurance contract is ambiguous and susceptible to two reasonable interpretations, the parties may submit extrinsic evidence as an aid in construction, and the resolution of the ambiguity is for the trier of fact. On the other hand, if the tendered extrinsic evidence is itself conclusory and will not resolve the equivocality of the language of the contract, the issue remains a question of law for the court."); see also Soc'y for Advancement of Educ., Inc. v. Gannett Co., No. 98-CV-2135 (LMM), 1999 WL 33023, at *4 (S.D.N.Y. Jan 21, 1999) ("[W]hen a contract is ambiguous . . . and there is extrinsic evidence of the parties' actual intent, its interpretation becomes a question of fact that should not be decided on a Rule 12(c) motion."); Ignazio Messina & C.S.P.A. v. Ocean Repair Serv. Co., No. 86-CV-7898 (KMW), 1991 WL 116336, at *6 (S.D.N.Y. June 17, 1991) (denying Rule 12(c) motion for breach of contract claim where it was "possible that this issue [of the parties' intentions would] be resolved through discovery").

Each party's interpretation of the policies with respect to pre-judgment interest is plausible under New York law, and the court cannot conclusively interpret the language

10

contained in the policies. This makes judgment on the pleadings improper, although it may be possible for the court to resolve the question at the summary judgment stage.[6]

## III. RULE 12(F) MOTION TO STRIKE

### A. Standard of Review

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Resolution of a Rule 12(f) motion is left to the district court's discretion. See E.E.O.C. v. Bay Ridge Toyota, Inc., 327 F. Supp. 2d 167, 170 (E.D.N.Y. 2004). However, motions to strike are generally disfavored "unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proven in support of the defense." Salcer v. Envicon Equities Corp., 744 F.2d 935, 939 (2d Cir. 1984) (internal quotation marks and citation omitted), vacated on other grounds, 478 U.S. 1015 (1986).

In order to prevail on a motion to strike for legal insufficiency, a plaintiff must demonstrate that "'(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense.'" F.T.C. v. Instant Response Sys., LLC, No. 13-CV-00976 (ILG) (VMS), 2014 WL 558688, at *1 (E.D.N.Y. Feb. 11, 2014) (quoting McCaffery v. McCaffery, No. 11-CV-703 (DRH) (WDW), 2012 WL 3260299, at *5 (E.D.N.Y. Aug. 8, 2012)); accord Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co., No. 13-CV-6705 (DLC), 2014 WL 1673351, at *2 (S.D.N.Y. Apr. 28, 2014). In a motion to strike redundant or impertinent material, "the [movant] must demonstrate that no evidence in support of the allegation would be admissible, that the allegations have no bearing on the issues in the case, and

---

[6] Kusulas's motion papers request summary judgment as an alternative to her Rule 12(c) motion. (See Not. of Cross Mot. for J. on the Pleadings or as a Matter of Law (Dkt. 70) at 1.) The court declines the invitation to convert Kusulas's Rule 12(c) motion into one for summary judgment.

11

that to permit the allegations to stand would result in prejudice to the movant." Wine Mkts. Int'l, Inc. v. Bass, 177 F.R.D. 128, 133 (E.D.N.Y. 1998) (citing Laverpool v. N.Y.C Transit Auth., 760 F. Supp. 1046, 1061 (E.D.N.Y. 1991); Moy v. Adelphi, 866 F. Supp. 696, 709 (E.D.N.Y. 1994)). With regard to the prejudice criterion in both tests, an increase in time and expense of litigation may constitute sufficient prejudice to warrant striking a defense. See Wausau Bus. Ins. Co. v. Horizon Admin. Servs. LLC, 803 F. Supp. 2d 209, 213 (E.D.N.Y. 2011) (citing Coach, Inc. v. Kmart Corp., 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010)); see also Fed. Deposit Ins. Corp. v. Eckert Seamans Cherin & Mellott, 754 F. Supp. 22, 23 (E.D.N.Y. 1990) ("Where the defense is insufficient as a matter of law, the defense should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim.").

**B.      Discussion**

GEICO argues that the court should strike Kusulas's third-through-eighth defenses under Rule 12(f). In her opposition papers, Kusulas responds only with respect to the seventh and eighth defenses. (See Mem. in Opp'n (Dkt. 70-2) at 18-19.)

### 1.      Third and Fifth Defenses (Personal Jurisdiction and Venue)

Kusulas's third and fifth defenses assert lack of personal jurisdiction and improper venue. (See Kusulas Ans. ¶¶ 6, 8.) A defendant waives the defenses of personal jurisdiction and improper venue by failing to assert them in a motion made under Rule 12 or a responsive pleading. See Fed. R. Civ. P. 12(h)(1). Under Rule 12(h)(1), if a litigant "'wishes to raise . . . these defenses he must do so at the time he makes his first significant defensive move.'" Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724, 729 (2d Cir. 1998) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1391 (3d ed. 1990)); see also Miller v. Batesville Casket Co., 219 F.R.D. 56, 58 (E.D.N.Y. 2003) ("[A]n objection to

improper venue is waived if it is not raised in a 12(b) motion, in a responsive pleading, or in an amendment to a responsive pleading permitted as a matter of course under Rule 15(a)."); Hartling v. Woodloch Pines, Inc., No. 97-CV-2587 (JSM), 1998 WL 575138, at *1 (S.D.N.Y. Sept. 8, 1998) ("A defendant who wishes to raise the defense of no personal jurisdiction or improper venue must do so in its first defensive move, be it a Rule 12 motion or an answer.").

Prior to submitting her Answer to GEICO's Complaint, Kusulas moved to dismiss GEICO's action under Rule 12(b). (See Mem. of Law in Supp. of Defs.' Mot. to Dismiss (Dkt. 11).) Specifically, Kusulas moved to dismiss for lack of subject-matter jurisdiction (Rule 12(b)(1)) and for failure to state a claim upon which relief can be granted (Rule 12(b)(6)), but did not object to personal jurisdiction or venue. (See id. at 6.) As such, there is no question of law which would allow Kusulas to succeed on these affirmative defenses. Furthermore, there are no questions of fact that can salvage the defenses—Kusulas admits that she resides in Kings County, New York (see Kusulas Ans. ¶ 3), and the events underlying the action occurred in Kings County (see Compl. ¶ 12; Kusulas Ans. ¶ 3.) Accordingly, GEICO's motion to strike the third and fifth defenses from Kusulas's Answer is GRANTED.

### 2. Fourth Defense (Damages)

Kusulas's fourth defense asserts that GEICO has not suffered any damages. (See Kusulas Ans. ¶ 7.) GEICO correctly argues that under the Declaratory Judgment Act (the "DJA"), actual damages are not required in order to seek judicial relief. The DJA provides in relevant part that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In fact, the very purpose of the DJA "is to avoid accrual of avoidable damages to one not certain of his rights and

to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued." Luckenbach Steamship Co. v. United States, 312 F.2d 545, 548 (2d Cir. 1963) (internal quotation marks and citation omitted). The DJA authorizes federal courts to provide relief to a plaintiff who "seeks to establish a right in order to guide his future conduct," who "seeks to escape liability," and who seeks "not to avoid future damages but to clarify legal relations and afford relief from uncertainty and insecurity." Channel Master Corp. v. JFD Elecs. Corp., 263 F. Supp. 7, 9 (E.D.N.Y. 1967); see also Aetna Life Ins. Co. of Hartford, Conn. v. Hawthorn, 300 U.S. 227, 241 (1937) ("Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages."). Indeed, in denying Kusulas's motion to dismiss, the court has already held that this declaratory judgment action is justiciable, that GEICO has standing to bring the action, and that resolution would serve a useful purpose of settling a "real and immediate" controversy concerning the uncertainty of GEICO's duty to indemnify Saco. Gov't Emps. Ins. Co. v. Saco, No. 12-CV-5633 (NGG) (MDG), 2014 WL 639419, at *6-9 (E.D.N.Y. Feb. 18, 2014).

Accordingly, GEICO was not required to plead actual damages in its declaratory judgment Complaint, and there is no question of law that would allow Kusulas to succeed on this defense; nor does Kusulas allege any facts that support the defense. In order to prevent prejudice to GEICO from unnecessary time and expense in litigating this defense, GEICO's motion to strike the fourth defense is GRANTED.

### 3. Sixth Defense (Unclean Hands)

In her sixth defense, Kusulas asserts that GEICO's action "is barred in whole or in part by the doctrine of unclean hands." (Kusulas Ans. ¶ 9.) The doctrine of unclean hands does not necessarily bar a declaratory judgment action, and its validity as a defense depends on the character of the underlying claim.[7] Unclean hands is an equitable doctrine and is a defense only to equitable claims. See Dayton Superior Corp. v. Marjam Supply Co., No. 07-CV-5215 (DRH) (WDW), 2011 WL 710450, at *18 (E.D.N.Y. Feb. 22, 2011) ("[W]hen a party 'seeks damages in an action at law, [a defendant] cannot avail itself of unclean hands as a defense.'" (quoting Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 607 (2d Cir. 2005))). Accordingly, the success of this affirmative defense depends upon the nature of the underlying claim—here, the breach of contract claim that would be brought against GEICO in a direct action to enforce the state court judgment and collect money damages. While the court recognizes that there are equitable remedies that may be sought in a breach of contract claim, the underlying claim here seeks to recover damages with no mention of equitable remedies, such as specific performance. See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State, 75 N.Y.2d 175, 181 (1990) ("The principal 'legal' remedy to enforce a contract is a judgment awarding a sum of money."); Hudson View II Assocs. v. Gooden, 644 N.Y.S.2d 512 (App. Div. 1996) ("A cause of action seeking money damages for breach of contract is quintessentially an action at law."). Thus, the doctrine of unclean hands is not available as a defense to the underlying legal claim, and GEICO's Rule 12(f) motion to strike the sixth defense is GRANTED.

---

[7] Unclean hands is "unrelated to the question whether a declaratory judgment would serve a useful purpose" and "has no bearing on the availability of declaratory relief." Chevron Corp. v. Salazar, Nos. 11-CV-3718 (LAK), 11-CV-0691 (LAK), 2011 WL 3628843, at *5 (S.D.N.Y. Aug. 17, 2011). Rather, the viability of unclean hands as a defense depends upon the type of potential claim that would be brought absent a declaratory judgment action. Id. at *6.

4. <u>Seventh and Eighth Defenses (Breach of Contract and Bad Faith)</u>

GEICO moves to strike Kusulas's defenses of breach of contract (Kusulas Ans. ¶¶ 10-11) and bad faith (id. ¶¶ 12-20), arguing that they are redundant and duplicative of her counterclaims for breach of contract and bad faith.

When a defendant mislabels a counterclaim as a defense, or a defense as a counterclaim, the district court is authorized to treat the matter as if it had been properly designated. See Fed. R. Civ. P. 8(c)(2); <u>Reiter v. Cooper</u>, 507 U.S. 258, 263 (1993). Here, Kusulas designated the matters as both affirmative defenses and counterclaims, but in fact, breach of contract and bad faith are not appropriately characterized as "affirmative defenses." "An affirmative defense is defined as '[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.'" <u>Saks v. Franklin Covey Co.</u>, 316 F.3d 337, 350 (2d Cir. 2003) (quoting <u>Black's Law Dictionary</u> 430 (7th ed. 1999)). Kusulas's breach of contract and bad faith defenses do not raise new facts that would defeat GEICO's Complaint even if the allegations therein are true; rather, the defenses directly contest the allegations in the Complaint, and could not survive if the Complaint's allegations are true. Accordingly, the breach of contract and bad faith assertions are more appropriately designated as defenses (but not "affirmative defenses") and counterclaims—they deny GEICO's allegations that it fulfilled the insurance contracts and acted in good faith, and raise independent causes of action against GEICO. <u>Compare</u> Fed. R. Civ. P. 8(b) ("In responding to a pleading, a party must: (A) state in short and plain terms its <u>defenses</u> to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party." (emphasis added)), <u>with</u> Fed. R. Civ. P 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or <u>affirmative defense</u> . . . ." (emphasis added)); <u>see also</u> Fed. R. Civ. P. 13(a)(1) ("A

pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."); Fed. R. Civ. P. 13(b) (permissive counterclaims).

Although Kusulas's seventh and eighth defenses are improperly labeled as "affirmative" defenses, the mislabeling is a mere semantic error and the court does not strike the defenses. GEICO has not demonstrated that it would be unduly prejudiced if the defenses are permitted to stand, nor can it demonstrate that the defenses are irrelevant to the subject matter of the litigation. The breach of contract and bad faith defenses and counterclaims involve the same factual backgrounds, and including the defenses in the case will not pose any increase in time or expense. Accordingly, GEICO's motion to strike Kusulas's seventh and eighth defenses is DENIED.

## IV. CONCLUSION

For the reasons set forth above, the parties' cross-motions for judgment on the pleadings are DENIED. GEICO's motion to strike the third-through-eighth affirmative defenses is GRANTED IN PART and DENIED IN PART; the court STRIKES Kusulas's third, fourth, fifth, and sixth affirmative defenses.

SO ORDERED.

Dated: Brooklyn, New York
April 2, 2015

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge