UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

GOVERNMENT EMPLOYEES INSURANCE
COMPANY,

                          Plaintiff,                          **MEMORANDUM & ORDER**

          -against-                                          **12-CV-5633 (NGG) (CLP)**

DIANE SACO and SUZANNE KUSULAS,

                          Defendants.
--------------------------------------------------------------------X

SUZANNE KUSULAS, as assignee of the rights
of DIANE SACO,

                          Plaintiff,                          **15-CV-634 (NGG) (CLP)**

          -against-

GOVERNMENT EMPLOYEES INSURANCE
COMPANY,

                          Defendant.
--------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

The parties in these two related cases seek the court's determination as to the

Government Employees Insurance Company's ("GEICO") obligation to pay certain costs under

its insurance policy issued to Diane Saco ("Saco"). Underlying the actions is a prior state court

trial, in which a jury adjudged Saco to be liable to Suzanne Kusulas ("Kusulas") for injuries

sustained in an automobile accident.

Before the court are GEICO's Motion for Summary Judgment as to all claims in both

actions (see GEICO's Mot. for Summ. J. ("GEICO Summ. J. Mot.") (Dkt. 115),

No. 12-CV-5633),[1] and Kusulas's Motion for Partial Summary Judgment as to her counterclaim for breach of contract (see Kusulas Summ. J. Mot. (Dkt. 117), No. 12-CV-5633).

For the following reasons, the court DENIES Kusulas's Motion for Partial Summary Judgment and GRANTS IN PART and DENIES IN PART GEICO's Motion for Summary Judgment.

## I.  BACKGROUND

### A.  The Parties' Statements of Undisputed Facts

The facts in this opinion are drawn, where possible, from the parties' statements of undisputed facts, submitted pursuant to Local Rule 56.1. (See Kusulas Rule 56.1 Statement (Dkt. 117-1); GEICO Rule 56.1 Statement (Dkt. 115-1).) See also Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (The court "is not required to consider what the parties fail to point out in their Local Rule 56.1 statements." (internal quotation marks and citations omitted)).

In addition to submitting their initial statements of "undisputed" facts, the parties both submitted counterstatements to each other's statements, and GEICO additionally submitted a reply to Kusulas's counterstatement. (See GEICO 56.1 Counterstatement (Dkt. 123-1); Kusulas Rule 56.1 Counterstatement (Dkt. 121); GEICO Rule 56.1 Reply (Dkt. 128)).) This opinion relies only on facts in the parties' Rule 56.1 statements that are truly undisputed and notes any apparent disagreement over any material allegation.

### B.  Factual Background

At issue in both of these cases is a car accident and subsequent state court case, the facts of which are undisputed.  On February 23, 2006, Saco collided with a car in which Kusulas was

---

[1] Unless otherwise noted, all docket citations in this opinion are to the first of the two cases filed, No. 12-CV-5633. The summary judgment motions also appear on the docket in Kusulas's parallel proceeding, No. 15-CV-634. (GEICO Summ. J. Mot. (Dkt. 26), No. 15-CV-634; Kusulas Summ. J. Mot. (Dkt. 28), No. 15-CV-634.)

a passenger. (Kusulas Rule 56.1 Statement ¶ 2.) At the time of the accident, Saco held two insurance policies issued by GEICO: an automobile policy with a policy limit of $300,000 (the "Automobile Policy") and a personal umbrella policy, with a policy limit of $1,000,000 (the "Umbrella Policy;" collectively, the "Policies"). (See GEICO Rule 56.1 Statement ¶¶ 1, 5.) The Umbrella Policy provided cumulative "excess coverage" to the Automobile policy, and so Saco's coverage as to the accident in question had a combined limit of $1,300,000 (the "Policy Limits"). (Id.)

In January 2007, Kusulas instituted an action against Saco in the Supreme Court of the State of New York, Kings County (the "Underlying Action"). (Id. ¶ 3.) On June 16, 2010, the state court granted Kusulas's motion for summary judgment as to liability, holding that Saco was fully liable for Kusulas's injuries resulting from the accident. (See id. ¶ 16; see also Kusulas Rule 56.1 Statement ¶ 5.) On March 5, 2012, a jury considering only the issue of damages returned a verdict of $3,369,066.75. (GEICO Rule 56.1 Statement ¶ 100; Kusulas Rule 56.1 Statement ¶ 8.) Following further proceedings, the state court entered judgment entered judgment for Kusulas in the amount of $2,857,900.55 on October 10, 2014. (GEICO Rule 56.1 Statement ¶ 106; Kusulas Rule 56.1 Statement ¶ 10.) Significantly for the motions considered here, this judgment included $779,273.26 in interest, calculated at the statutory rate of nine percent per annum from the date of the June 16, 2010, judgment as to Saco's liability for Kusulas's injury. (Kusulas Rule 56.1 Statement ¶ 10.)[2]

---

[2] On May 12, 2012, GEICO paid Kusulas $1,283,500. (Kusulas Rule 56.1 Statement ¶ 9.) Kusulas characterizes this amount as "partial satisfaction" of the judgment, a characterization which GEICO disputes based on the claims at issue in the present case. (See GEICO 56.1 Counterstatement ¶ 9.) The court declines to characterize the payment at this point and only notes that this payment represented the remaining policy coverage amount not in dispute as between GEICO and Saco at the time of the payment.

From October 2007 through return of the jury verdict, the parties engaged in off-and-on settlement discussions and GEICO developed internal case valuations, reviewed in greater detail below. (See Section II.C.1, infra.)

### C.    Procedural History

GEICO filed the first of the two captioned cases in this court on November 15, 2012, and named both Saco and Kusulas as defendants. (Compl. (Dkt. 1).) That complaint seeks declaratory judgment that (1) GEICO is not required to make any payments in excess of the Policy Limits; (2) the Policies do not require payment for Saco's personal attorney's fees; and (3) GEICO is not subject to any claim for bad faith in relation to its obligations to Saco. (Id. ¶ 41.) In her answer, Kusulas included two counterclaims: (1) GEICO breached its contract in failing to tender to Saco the full Policy Limits plus prejudgment interest[3] on that amount; and (2) GEICO acted in bad faith towards Saco in its failure to settle the Underlying Action.[4] (See Kusulas Answer & Countercl. (Dkt. 51) ¶¶ 21-28; id. ¶¶ 29-63.) While, as noted, Saco originally appeared as a defendant in the case, she assigned her rights against GEICO to Kusulas on December 23, 2014. (GEICO Rule 56.1 Statement ¶ 107.)

## II.    DISCUSSION

Pending before the court are the parties' cross-motions for summary judgment. GEICO seeks summary judgment as to all claims in both actions. (See Mem. in Supp. of GEICO's Mot. for Summ. J. ("GEICO Summ. J. Mem.") (Dkt. 116) at 1.) Kusulas moves for summary

---

[3] The phrase "prejudgment interest" as it is used in the parties' submissions and this order refers to interest accruing from the time that liability was determined (June 16, 2010) to the time that the jury returned its verdict (March 5, 2012), as this is the relief requested by Kusulas in her Motion. (See Kusulas Summ. J. Mem. (Dkt. 120) at 10.)

[4] On November 19, 2014, Kusulas withdrew her bad faith claim (Nov. 19, 2014, Min. Entry), which she subsequently brought as a separate action in New York state court (see Kusulas Rule 56.1 Statement ¶¶ 23). GEICO removed the separate action to this court (see Not. of Removal (Dkt. 1), No. 15-CV-634, ¶¶ 3-4), and the court consolidated the two actions (Aug. 4, 2015, Order (Dkt. 99)).

judgment only as to her claim for breach of contract based on GEICO's failure to pay prejudgment interest on the Policy Limits. (See Mem. in Supp. of Kusulas's Mot. for Partial Summ. J. ("Kusulas Summ. J. Mem.") (Dkt. 120) at 1.) The court concludes that GEICO is entitled to summary judgment as to its liability for prejudgment interest in excess of the Policy Limits, as extrinsic evidence demonstrates that the parties to the Policies lacked intent for GEICO to be liable for those payments. Kusulas's Motion for Partial Summary Judgment must therefore be denied. The court also denies GEICO's request for summary judgment as to whether it discharged its duty of good faith to Saco in the Underlying Action, as conflicting evidence presented by the parties gives rise to a genuine dispute of material fact.

## A.    Legal Standard

A court must grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The movant may discharge this burden by showing that the non-moving party has 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co., — F. Supp. 3d —, No. 10-CV-9371 (KPF), 2015 WL 1914319, at *6 (S.D.N.Y. Apr. 28, 2015) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

"In determining whether an issue is genuine, '[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" SCW West LLC v. Westport Ins. Corp.,

856 F. Supp. 2d 514, 521 (S.D.N.Y. 2012) (quoting <u>Cronin v. Aetna Life Ins. Co.</u>, 46

F.3d 196, 202 (2d Cir. 1995)). "[T]he judge's function is not [] to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial."

<u>Redd v. N.Y. Div. of Parole</u>, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting <u>Liberty Lobby</u>, 477

U.S. at 249). However, "[a] party may not rely on mere speculation or conjecture as to the true

nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory

allegations or denials . . . cannot by themselves create a genuine issue of material fact where

none would otherwise exist." <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) (internal

quotation marks and citation omitted).

**B.      Breach of Contract Claim**

Both Kusulas and GEICO move for summary judgment as to GEICO's obligation to pay

the prejudgment interest that accrued between the June 16, 2010, decision regarding liability and

the March 5, 2012, jury verdict on damages. (<u>See</u> Kusulas Summ. J. Mem. at 10; GEICO

Summ. J. Mem. at 7-10). Kusulas does not claim payment for all prejudgment interest on the

<u>total judgment</u>; rather, she seeks the interest accrued "on the portion of the Judgment up to

GEICO's policies' limits (i.e. up to $1,283,500)." (<u>See</u> Kusulas Summ. J. Mem. at 10.)

The parties raise two issues for the court's consideration: (1) Is GEICO required to pay

prejudgment interest in excess of the Policy Limits as a matter of New York law? (2) If not, do

the Policies' terms require such payment? The court finds that neither state law nor the Policies'

terms obligate GEICO to pay prejudgment interest in excess of the Policy Limits and so

concludes that GEICO is entitled to summary judgment on the issue.

1.      <u>Obligation to Pay Prejudgment Interest Under New York Law</u>

In the court's previous decision on the parties' cross-motions for judgment on the

pleadings, the undersigned determined that "New York regulations do not require that an

6

automobile insurance policy cover prejudgment interest in excess of the policy limit."
(Apr. 2, 2015, Mem. & Order (Dkt. 90) at 7.) Kusulas urges the court to reconsider its position
and argues that the previous decision misconstrued the applicable cases. (Kusulas Summ. J.
Mem. at 20.) The court finds no support for her argument that New York requires insurers to
pay prejudgment interest.

Kusulas's argument hinges on the New York Court of Appeals' decision in Dingle v.
Prudential Property & Casualty Ins. Co., 85 N.Y.2d 657 (N.Y. 1995). In a bifurcated trial, the
defendant was found to be 100% liable for a car accident. Id. at 659. The defendant's insurance
policy did not address payment of interest accrued between the dates on which liability was
adjudged and damages were set in a bifurcated trial, but the insurer agreed to pay interest during
that period on an amount up to the policy limit. Id. Following the damages determination, the
insurer-defendant paid out the policy limit amount, the interest on the policy amount "accruing
from the date of the liability verdict to the date of the damages award" (i.e. prejudgment interest
on the policy limits), and interest on the entire verdict from the date of the damages award to the
date of tender. Id. at 659-60. The issue before the court was thus not the payment of interest on
the policy limit, but rather the plaintiff's request for the "difference between the interest on the
entire judgment . . . and the amount actually tendered." Id. at 660.

Dingle therefore takes as a given the precise issue that is in dispute here: the defendant-
insurer had already agreed to pay prejudgment interest on the policy limits in addition to the
entire policy limit, exactly what GEICO is refusing to do here. In support of her contrary
reading of the case, Kusulas points to the first "Question Presented" in the Dingle plaintiff's
brief: "Must an insurance carrier . . . pay interest on the judgment against its insured from the
date of liability determination to the date of the tender of the policy?" (Ex. E to Kusulas

Summ. J. Mot. at 1.) However, she presents this argument entirely without context, as the remainder of the cited brief reaffirms that the defendant insurer had already agreed to pay prejudgment interest and was not contesting that point. (Id. at 3-4.) For the same reason, Kusulas's citations to broad policy statements in Dingle do not bind the court here: they were made without consideration of the particular issue here, and it is not the place of this court to determine whether the Court of Appeals would have made the same statements in reviewing different contract language.[5]

Stripped of support from Dingle, Kusulas's remaining arguments do not further her position.[6] The court is not persuaded by Kusulas's characterization of the holding in Dingle and reaffirms its prior decision that insurers in New York are not bound by law to pay prejudgment interest in excess of policy limits.

### 2. Obligation to Pay Prejudgment Interest Under Saco's Policies

In the absence of a legal rule requiring insurers to pay prejudgment interest on their policy limits, the parties dispute whether the Policies' terms require such payments. The court previously concluded that the Policies were susceptible to "more than one reasonable interpretation." (Apr. 2, 2015, Mem. & Order at 7.) Due to the resulting ambiguity as to

---

[5] Kusulas particularly relies on the Court of Appeals' statement that "the controlling inquiry should be who has retained or benefitted from the money belonging to the plaintiff during that period." (See Kusulas Summ. J. Mem. at 12 (citing Dingle, 85 N.Y.2d at 662).) She argues that, as GEICO retained the money in the prejudgment period, this language indicates that they "benefitted from the money" in the context of this inquiry. (Id.)

[6] In addition to Dingle, Kusulas cites two other cases, Sinn v. Nationwide Mut. Ins. Co, 666 N.Y.S.2d 89 (App. Div. 1997) and Ragins v. Hospitals Ins. Co, 22 N.Y.3d 1019 (N.Y. 2013), neither of which supports her contention that insurers are required to pay prejudgment interest on their policy limits regardless of the language of the policies. (See Kusulas's Summ. J. Mem. at 13-14.) While Sinn, considering a policy that was "not more generous than . . . required by regulation," awarded interest from the date of the liability determination, the opinion offers no suggestion that the parties contested prejudgment interest or that the court specifically considered that issue. 666 N.Y.S.2d at 89. The Court of Appeals' decision in Ragins offers even less support to Kusulas's position, as the interest determination is based on the "plain meaning of the . . . policies" and not an obligation imposed by law. 981 N.Y.2d at 1023.

prejudgment interest, the court invited the parties to submit extrinsic evidence to elucidate the intent behind the relevant provisions. (Id. at 9-11.)

Kusulas argues again that the Policies unambiguously demonstrate the parties' intent for GEICO to pay prejudgment interest, including interest in excess of the Policy Limits. Both parties also present extrinsic evidence as to the parties' intent. The court once again finds the Policies' language to be ambiguous, but concludes that the extrinsic evidence demonstrates that the parties lacked intent for GEICO to be liable for prejudgment interest payments in excess of the Policy Limits.

### a. Ambiguity in the Policies

"When a dispute arises involving the terms of an insurance contract, New York insurance law provides that an insurance contract is interpreted to give effect to the intent of the parties expressed in the clear language of the contract." Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) (internal quotation marks and citation omitted). Where "an insurance policy is 'clear and unambiguous,' it is to be given its 'plain and ordinary meaning,' and courts are to refrain from rewriting the agreement." Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co., 600 F.3d 190, 201 (2d Cir. 2010) (quoting Dalton v. Harleysville Worcester Mut. Ins. Co., 557 F.3d 88, 90 (2d Cir. 2009)). Whether or not a contract is ambiguous is an issue of law for the court to assess in view of whether the challenged language "is reasonably susceptible of more than one interpretation," a judgment which "the court makes by reference to the contract." Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank, 57 F.3d 146, 152 (2d Cir. 1995).

Thus, the court is charged with deciding in the first instance whether the Policies unambiguously demonstrate the parties' intent that GEICO should pay prejudgment interest, including where that interest is in excess of the Policy Limits. The Automobile Policy contains

only one reference to payment of interest, contained in a list of "additional payments [GEICO] will make under the liability coverages": "[a]ll interest accruing on the amount of a judgment which represents our limit of liability, until we have paid, offered, or deposited in court that part of a judgment not exceeding the limit our liability." (Ex. 9 to Kusulas Summ J. Mot. (Dkt. 117-10) at ECF pp. 10-11 (emphasis added).) The Umbrella Policy likewise contains only one reference to interest, contained in a section titled "defense of suits not covered by other insurance," which states: "[w]hen [GEICO] provide[s] defense, we will . . . pay interest accruing after a judgment is entered in a suit we defend; our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our liability limits." (Ex. 10 to Kusulas Summ J. Mot. (Dkt. 117-11) at ECF pp. 8-9 (emphasis added).)[7]

Kusulas argues that the wording and placement of these policies demonstrate that GEICO's responsibility for interest payments is not constrained by the Policy Limits. Pointing particularly to the fact that the Automobile Policy language regarding interest is listed as an "additional payment," she argues that the Policy Limits apply only to damages and do not affect GEICO's obligations as to interest on judgments under the policy. (Kusulas Summ. J. Mem. at 15-16.) However, this discussion does not resolve the ambiguity identified by the court's previous decision and reaffirmed here. The policy language is ambiguous as to both: (1) whether GEICO agreed to pay prejudgment interest or solely post-judgment interest; and (2) in that event, whether GEICO agreed to pay interest amounts in excess of the Policy Limits. While the

---

[7] Additionally, in discussing its "limits of liability," the Umbrella Policy states that "[i]f both primary insurance and this policy cover an occurrence, we pay only those damages which exceed the liability limits listed in Item V of the declarations, or any applicable primary policy, whichever is greater." (Ex. 10 to Kusulas Summ J. Mot. at ECF p. 8). The "liability limits in Item V of the declarations" appears on a separate page of the policy, which lists the "Minimum Required Limits of Primary Insurance" as "$300,000/300,000/100,000." (Id. at ECF p. 2.) This is an apparent reference to the automobile insurance policy limits. The significance of this language is not clear and is not addressed by the parties.

policies clearly envision that some interest payments will exceed the Policy Limits, Kusulas' arguments do not provide any further information as to whether the interest provisions in each policy evince intent that GEICO should pay prejudgment interest, or how the different passages in the Automobile and Umbrella Policies should be read together.

Thus, the court is remains unable to determine from the language of the Policies themselves whether the parties intended that GEICO would pay prejudgment interest and, if so, whether such payments could exceed the Policy Limits. Accordingly, the court is unable to rule on the meaning of the Policies based solely on the four corners of the contract.

> b.    *Extrinsic Evidence of the Parties' Intent*

"When a court decides, after examination of the contractual language, that an insurance policy is ambiguous, it looks outside the policy to extrinsic evidence, if any, to ascertain the intent of the parties." Andy Warhol Found. for Visual Arts, Inc., v. Fed. Ins. Co., 189 F.3d 208, 215 (2d Cir. 1999). The purpose of this examination is to determine the "meaning intended by the parties during the formation of the contract." Morgan Stanley Grp. Inc. v. New Eng. Ins. Co., 225 F.3d 270, 276 (2d Cir. 2000) (quoting Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, Eng., 136 F.3d 82, 86 (2d Cir. 1998)).

The meaning of an ambiguous contract is generally an issue of fact and so unsuitable for summary judgment. See Fed. Ins. Co. v. Am. Home Assur. Co., 639 F.3d 557, 567 (2d Cir. 2011). However, summary judgment may be appropriate "if the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language." Id. (internal quotation marks and citation omitted). Said differently, a court can determine the meaning of an ambiguous contract on summary judgment "if the extrinsic evidence is 'so one-sided that no reasonable person could decide the contrary.'" Sarinsky's Garage Inc. v. Erie

11

Ins. Co., 691 F. Supp. 2d 483, 486 (S.D.N.Y. 2010) (quoting 3Com Corp. v. Banco do Brasil, S.A., 171 F.3d 739, 746 (2d Cir. 1999)).

GEICO points to two primary sources of evidence of the parties' intent: deposition testimony of its own employees stating that its policies do not cover any prejudgment interest in excess of policy limits (see Ex. AA to GEICO Summ. J. Mot. ("Indjeyiannis Dep. Tr.") (Dkt. 151-34) 37:15-18; Ex. CC to GEICO Summ. J. Mot. ("Feinman Dep. Tr.") (Dkt. 115-36) at 181:23-183:6; Ex. II to GEICO Summ. J. Mot. ("Siegelwax Dep. Tr.") (Dkt. 115-42) 42:14-19), and the undisputed fact that Saco herself has no recollection of obtaining the policies at issue (GEICO Rule 56.1 Statement ¶ 112). Based on these two pieces of evidence, GEICO asserts that "[t]he probative evidence establishes that GEICO never intended to cover prejudgment [interest] in either policy" and that Saco "cannot refute the evidence regarding GEICO's intentions regarding prejudgment interest." (See GEICO Summ. J. Mot. at 9.)

Kusulas attempts to contradict GEICO's assertions as to its intent in several ways. She notes that, by GEICO's own admission, it pays prejudgment interest where the combined interest and damages fall within policy limits. (Kusulas Mem. in Opp'n to GEICO Summ. J. Mot. ("Kusulas Opp'n Mem.") (Dkt. 122) at 4-5 (citing Aff. of Byron Wobeter (Dkt. 115-3) ¶ 118).) From this, she argues that "[u]nless GEICO is in the business of making gratuitous payments to injured plaintiffs," the only "reasonable conclusion" is that GEICO makes those payments in recognition of its obligation to do so.[8] (Id.) Kusulas also points to statements by the trial lawyer retained by GEICO in the Underlying Action that, in his understanding, GEICO was responsible for paying prejudgment interest on the award and that he had discussed the accrual of that

---

[8] Kusulas appears to argue that the obligation that GEICO is recognizing here is one imposed by New York law. (Kusulas Opp'n Mem. at 5.) While the court has already held that she fails to establish this obligation, see supra Section II.B.1, this argument may still be relevant to evaluating GEICO's intent in making those payments.

interest with GEICO on several occasions prior to trial. (Id. at 5-6 (citing Ex. J to GEICO Summ. J. Mot. ("Nelson Dep. Tr.") (Dkt. 115-17) 75:11-76:17; see also Kusulas Summ. J. Mem. at 6-7, 18.) Finally, she offers testimony from an expert witness who was formerly employed by another large New York state insurer, who testified that his previous employer would have paid prejudgment interest in similar circumstances "without any second thoughts."[9] (Ex. 23 to Kusulas Summ. J. Mot. (Dkt. 117-24) at ECF p. 8.)

The court concludes that GEICO is entitled to summary judgment on this point. The point in issue—the intent of the parties—is best viewed as having two component parts: (1) whether GEICO was obligated to pay prejudgment interest; and (2) whether this obligation would cover amounts in excess of the Policy Limits. In order to satisfy its burden, either on its claim for declaratory judgment or its defense to Kusulas's counterclaim, GEICO need only show that the one of these two elements is answered in the negative. GEICO's proffered testimony meets this requirement, as it supports its claim that the contracting parties did not intend for GEICO to be obligated to pay prejudgment interest in excess of the Policy Limits. Kusulas, on the other hand, would need to demonstrate the parties' affirmative intent as to both of the elements noted above in order to be entitled to relief, and she fails to make any showing as to the second element. While Kusulas relies heavily on the declarations by GEICO's employees that it might pay prejudgment interest where its total payment does not exceed the policy limits, this testimony speaks only to the first element: GEICO's willingness to make prejudgment interest

---

[9] Kusulas also offers testimony from both this expert and a second expert, a former justice of the New York State Appellate Division, that this court erred in its determination that the insurers are not required by state law to pay prejudgment interest in all cases. (See Ex. 23 to Kusulas Summ. J. Mot. at ECF pp. 5-6; Ex. 22 to Kusulas Summ. J. Mot. (Dkt. 117-23) at ECF pp. 11-13.) In as much as Kusulas's experts testified regarding of issues of law, and not as to their interpretations of the Policies or the practice in the insurance industry, the court does not accord that testimony any weight. See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Secs., LLC, 716 F. Supp. 2d 220, 223-24 (S.D.N.Y. 2010) ("It is [] well-established that expert witnesses are not permitted to testify about issues of law—which are properly the domain of the trial judge and jury.").

payments in at least some cases. From this, she asks the court to assume GEICO's further intent as to prejudgment interest in excess of policy limits. However, this would require the court to inappropriately engage in "speculation or conjecture as to the true nature of the facts" rather than properly evaluating the evidence that is actually before it. Hicks, 593 F.3d at 166 (internal quotation marks and citation omitted). The testimony from an employee of a different insurance company and an outside attorney employed by GEICO as to their own expectations offers no additional assistance to Kusulas's case, as it does nothing to demonstrate the parties' intent at the time of contracting. Accordingly, GEICO's Motion for Summary Judgment as to prejudgment interest is granted and Kusulas's Motion for Partial Summary Judgment is denied.[10,11]

## C.    Bad Faith

GEICO also moves for summary judgment on its claim that it did not violate its duty of good faith during settlement discussion in the Underlying Action. (See generally GEICO Summ. J. Mem. at 10-24.) GEICO contends that, at all times prior to the trial, it valued the settlement at an amount below the Policy Limits and so did not violate its good faith obligation by offering less that the Policy Limits. (Id.) Kusulas disputes this characterization, arguing that GEICO was on notice of the significant potential that a jury would return a verdict in excess of the Policy Limits, and that its failure to settle for an amount equal to the Policy Limits evinces bad faith.

---

[10] Kusulas argues that, if the court determines that the contract language is ambiguous, it is obligated to interpret any ambiguities in favor of Kusulas. (Kusulas Summ. J. Mem. at 16.) Under the doctrine of contra proferentem, ambiguity in an insurance policy "'must be resolved against the insurer which drafted the contract.'" Catlin Spec. Ins. Co. v. QA3 Fin. Corp., 36 F. Supp. 3d 336, 341 (S.D.N.Y. 2014) (quoting State v. Home Indem. Co., 66 N.Y.2d 669, 671 (N.Y. 1985)). However, contra proferentem only applies where a court is unable to determine the meaning of a contract even after considering extrinsic evidence. See id. at 342 ("Where the words of a contract are ambiguous, but there is evidence of parties' intent, the 'fundamental, neutral precept' of contract interpretation still must apply, and fact-finders must determine the parties' intent.") Here, the court finds that the one-sidedness of the extrinsic evidence resolves the ambiguity, and so it does not apply the doctrine of contra proferentem.

[11] Kusulas also separately moves for summary judgment as to GEICO's alleged continuing accrual of interest. (Kusulas Summ. J. Mem. at 22-25.) Plaintiff argues that, because GEICO was required to pay prejudgment interest and failed to do so, that unpaid amount has itself accrued interest. The court also denies the motion for summary judgment as to this additional, derivative amount of interest.

14

Because of the fact-intensive nature of a bad faith claim, the court discusses GEICO's consideration and attempted negotiation of a settlement in the Underlying Action in detail, noting both the facts upon which the parties agree and those in dispute. The court then reviews New York law on insurers' good faith obligations in settlement. The court concludes that Kusulas presents multiple factual issues that go to the heart of the issue. Summary judgment must therefore be denied.

### 1. Relevant Factual History

Following Kusulas's institution of the Underlying Action, but prior to the judgment holding Saco entirely liable for the car accident, Kusulas's then-attorney "demanded that [GEICO] tender its full policy limits of $1.3 million to settle the underlying action." (GEICO Rule 56.1 Statement ¶ 5.) From that time up until September 15, 2011, Kusulas did not formally deviate from this demand.[12] (See id. ¶ 61.)

Following Kusulas's initial demand letter, GEICO retained the law firm of Morris Duffy Alonso & Faley ("Morris Duffy") to defend Saco in the Underlying Action. (Id. ¶ 7.) Shortly thereafter, Morris Duffy provided GEICO with a report (the "First Morris Duffy Report") reviewing the potential damages in the case. (Id. ¶ 17.) This report assessed that Kusulas's claimed injuries had a "settlement value" of $600,000 to $800,000 and a "potential jury verdict value" of $850,000 to $1,000,000 (id. ¶ 21-22; Ex. O to GEICO Summ. J. Mot. (Dkt. 115-22) at 11), predictions that were based in part based on potential issues with the causal link between the accident and Kusulas's two spinal surgeries. (See GEICO Rule 56.1 Statement ¶¶ 19-20.) A

---

[12] The parties dispute whether, following a January 2011 mediation session that recommended a settlement amount below the Policy Limits, Kusulas would have that lowered figure. (See, e.g., Kusulas Rule 56.1 Counterstatement ¶ 41.) Kusulas does not present any evidence to suggest that either she or her attorney made direct statements expressing a willingness to settle at a lower amount. (Id.) As such, the court assumes for purposes of this motion that Kusulas never made a formal offer to settle for less than the Policy Limits.

subsequent report (the "Second Morris Duffy Report") provided summaries of cases involving plaintiffs with "similar injuries [to those] sustained by [Kusulas]." (Ex. P to GEICO Summ. J. Mot. (Dkt. 115-23) at 1.) The report included awards and settlements both above and below the Policy Limits and highlighted that "many of the jury verdicts involving one cervical fusion surgery resulted in excess of the [policy amount] in the instance [sic] case." (Id. at 2.) Roughly a year after receiving the two Morris Duffy reports, GEICO retained a second law firm to independently analyze the case. (GEICO Rule 56.1 Statement ¶ 63.) That firm concurred with the Morris Duffy reports, finding both the estimated settlement and jury verdict amounts to be "sound and reasonable." (Ex. X to GEICO Summ. J. Mot. (Dkt. 115-31) at 11.)

Between receipt of the Morris Duffy reports and the beginning of the damages trial, GEICO made Kusulas two separate settlement offers—one for $200,000 and one for $300,000 (GEICO Rule 56.1 Statement ¶¶ 27, 39)—both of which Kusulas rejected (id. ¶¶ 28, 42). The parties also appeared before a mediator, who recommended settling the case for $1.15 million. (Id. ¶ 29.) During this period, GEICO gradually increased Morris Duffy's settlement authority from $200,000 to $450,000. (Id. ¶¶ 27, 30, 65.) However, the Morris Duffy attorney handling the matter, Greg Nelson ("Nelson"), never made an offer at the maximum authorized amount.[13] (Id. ¶¶ 34, 65-66.)

In the final months before damages-only trial, Kusulas's attorneys made one final offer to settle the case for the Policy Limits. (Id. ¶ 61.) The offer letter provided a firm cutoff date, after which point it stated Kusulas would seek both the Policy Limits and prejudgment interest. (Id.) GEICO does not appear to have taken any action in response to this offer.

---

[13] While Kusulas agrees that Nelson never made an offer at the upper limit of his settlement authority, she argues that he did not do so because of his belief that the settlement authority was inadequate, pointing to the deposition testimony offered by the GEICO employee responsible for overseeing Saco's case. (See Kusulas Rule 56.1 Counterstatement ¶ 66 (citing Indjeyiannis Dep. Tr. 145:3-10).)

The trial began on February 29, 2012. On March 2, 2012, GEICO authorized Nelson to offer a "control contract"[14] that would provide Kusulas with a minimum of $300,000 and a maximum of $1,283,500. (Id. ¶ 90.) Following trial developments on the same day, GEICO increased Nelson's settlement authority, permitting him to offer $1,283,500 without the control contract restrictions. (Id. ¶ 94.) Nelson and the GEICO employee responsible for overseeing the case, Helen Indjeyiannis ("Indjeyiannis"), offered Kusulas first the control contract and then the full Policy Limits. (Id. ¶ 95, 97.) Kusulas refused both offers, and the jury subsequently returned its verdict of more than $3.3 million. (Id. ¶¶ 96, 98-99.)

Much of the parties' disagreement centers on whether Nelson put GEICO on notice during settlement negotiations that the jury verdict could be considerably higher than the amount reflected in the First Morris Duffy Report. It is undisputed that Morris Duffy never provided written revisions to its damages estimates, (id. ¶¶ 26, 33, 36-37, 46-48, 51-53, 57, 59-60); however, evidence developed during discovery suggests that Nelson had concerns that any jury verdict would exceed the Policy Limits and may have communicated these concerns to GEICO. Nelson testified that he verbally cautioned Indjeyiannis that, in his judgment, Kusulas's claims would result in a jury verdict in excess of the Policy Limits (see, e.g., Nelson Dep. Tr. 23:3-14; 29:10-31:2; 32:3-17; 35:5-36:4), and requested that GEICO settle the matter for the Policy Limits (see, e.g., id. 36:11-17).[15] Kusulas also points to entries in GEICO's internal case-

---

[14] While the parties do not clarify their use of "control contract," they appear to be referring to a so-called "high-low agreement," which is a "'[a] settlement in which a defendant agrees to pay the plaintiff a minimum recovery in return for the plaintiff's agreement to accept a maximum amount regardless of the outcome of the trial.'" Richard Lorren Jolly, Note, Between the Ceiling and the Floor: Making the Case for Required Disclosure of High-Low Agreement to Juries, 48 U. Mich. J.L. Reform 813, 814 & n.3 (2015) (quoting Black's Law Dictionary (9th ed. 2009).

[15] For purposes of the summary judgment motion, GEICO does not dispute that Nelson informed Indjeyiannis that a jury would likely return a verdict in excess of the Policy Limits. (GEICO Summ. J. Mem. at 22 n.13.) However, GEICO notes that this testimony is contradicted by Indjeyiannis' deposition testimony. (Id.)

tracking logs referencing communications with Nelson in which he made similar warnings—including statements that "This Is A Very Big Case" and that he believed their defenses would not be "Enough to a Brooklyn Jury To Come Back With Less Than the Policy"—and conveyed his assessment that Kusulas would not settle her claims for less than the $1.15 million recommended by the mediator. (See, e.g., Kusulas 56.1 Counterstatement ¶ 26 (listing entries in GEICO's activity log (Ex. Q to GEICO Summ. J. Mot. (Dkt. 115-24)).)[16]

### 2. The Duty of Good Faith in Settlements

Under New York law, insurers who take charge of defending a claim against one of their policy holders are subject to a duty to act in good faith in deciding whether to settle those claims. Greenidge v. Allstate Ins. Co., 446 F.3d 356, 361 (2d Cir. 2006). Plaintiffs in "bad faith" actions "must show that the insured lost an actual opportunity to settle the claim at a time when all serious doubts about the insured's liability were removed," and "the potential recovery far exceed[ed] the insurance coverage." Pavia v. State Farm Mut. Auto. Ins. Co., 82 N.Y.2d 445, 454 (N.Y. 1993) (internal citations, alterations, and quotation marks omitted). Plaintiffs are also required to show that "the insurer's conduct constituted a 'gross disregard' of the insured's interests—that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer." Id. at 453 (internal citation omitted).

Determination of whether an insurer has violated their duty of good faith is "highly case specific, and '[n]o pat formula applies to the wide variety of fact patterns that occur, or readily resolves whether an insurer acted in good faith.'" Schwartz v. Twin City Fire Ins. Co., 492

---

[16] GEICO filed the relevant activity log entries under seal. (See Apr. 5, 2016, Order (granting motion to file certain exhibits under seal).) For present purposes, the court refers only to those portions of the activity log that are quoted in the parties' 56.1 statements, as the parties do not contest that the entries are accurately reflected.

F. Supp. 2d 308, 330 (S.D.N.Y. 2007) (quoting Pinto v. Allstate Ins. Co., 221 F.3d 394, 399

(2d Cir. 2000)). Instead, courts use a multifactor analysis to assess what the insurer knew about

their insured's potential liability and damages at the time a settlement offer was made. See

Greenidge, 446 F.3d at 362 (citing New England Health Ins. Co. v. Healthcare Underwriters

Mut. Ins. Co., 295 F.3d 232, 241-42 (2d Cir 2002)). The Pattern Jury Instructions used by New

York courts suggest several considerations that may be used to inform this inquiry, including:

> (1) "the probability . . . that the jury would find [against the insured]";
>
> (2) "the probability . . . that a verdict[ against the insured] would . . . exceed the policy limit";
>
> (3) "whether the [insurer] investigated the circumstances of the accident . . . sufficient to be able to evaluate the probability of a verdict against [the insured]";
>
> (4) "what attempts [the insurer] made to settle [the] claim[ and] at what point in the trial such attempts were made";
>
> (5) "what recommendation concerning settlement had been made to [the insured] by the attorney [retained] to defend the action";
>
> (6) "whether [the insurer] informed [the policy holder] of the amount for which [the injured party] was prepared to settle";
>
> (7) "whether [the insurer] suggested to [the policy holder] of the advisability of obtaining an independent attorney";
>
> (8) "whether [the insurer] offered [the policy holder] the chance to contribute to [the] settlement"; and
>
> (9) "the financial risk involved for [the policy holder] if the settlement was not made as compared with the risk in relation to the limit of its policy which [the insurer] ran if the settlement was not made."[17]

---

[17] In their respective briefs, the parties list factors that are substantially similar to those noted in the pattern jury instructions. (Compare GEICO's Summ. J. Mem. at 10-11 with Kusulas Summ. J. Opp'n at 11-12.)

N.Y. Pattern Jury Instr. 4:67. "In weighing these factors, the touchstone inquiry is whether there was a high probability that the [party claiming bad faith] 'would be subject to personal liability because of the [] insurer's actions, and whether an excess verdict reasonably could have been predicted.'" Scottsdale Ins. Co. v. Indian Harbor Ins. Co., 994 F. Supp. 2d 438, 452 (S.D.N.Y. 2014) (quoting Pinto, 221 F.3d at 399).

Evaluating the parties allegations in the context of the factors listed above, the court readily concludes that Kusulas raises sufficient factual allegations to overcome summary judgment. GEICO relies heavily on the First and Second Morris Duffy reports as evidence that it valued Kusulas's claims at less than the Policy Limits and argues that Nelson's failure to challenge causation as to Kusulas's injuries at trial undercut the company's assumptions about the value of the case. However, both Nelson's testimony and the "activity log" notes provide a reasonable basis for concluding that "an excess verdict reasonably could have been predicted" even before the trial and at a time when an offer at the Policy Limits amount was still available. Pinto, 221 F.3d at 399. In particular, Nelson testified that he informed GEICO directly that he believed the jury verdict would come in above the Policy Limits and urged the company to settle at or within the Policy Limits. (Nelson Dep. Tr 23:3-14; 29:10-31:2; 32:3-17; 35:5-36:4; 36:11-17.) This testimony fits squarely into the second and fifth considerations listed above. Likewise, a jury could reasonably view GEICO's settlement offers and the authority given to Nelson—all of which fell considerably below Kusulas's Policy Limits demand—as indicative that GEICO improperly considered its own interests ahead of Saco's in attempting to settle the case. Accordingly, GEICO's motion for summary judgment with respect to its duty of good faith is denied.

**III. CONCLUSION**

For the foregoing reasons, Kusulas's Motion for Partial Summary Judgment (Dkt. 117, No. 12-CV-5633; Dkt. 28, No. 15-CV-634) is DENIED. GEICO's Motion for Summary Judgment (Dkt. 115, No. 12-CV-5633; Dkt. 26, No. 15-CV-634) as to its request for declaratory judgment and Kusulas's cross-claims is GRANTED as to GEICO's obligation to pay prejudgment interest; and is DENIED as to GEICO's satisfaction of its duty of good faith.

The parties are directed to contact the chambers of Magistrate Judge Pollak to schedule the filing of a Joint Pretrial Order in accordance with this court's Individual Rules, to be electronically filed no later than June 1, 2016. The parties are further directed to confer and to contact the court's Deputy at 718-613-2545 to set a trial date.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
     March _30_, 2017

NICHOLAS G. GARAUFIS
United States District Judge